**WINDSOR HOTEL COMPANY**

v.

**CENTRAL MAINE POWER COMPANY,**
**City of Belfast, and Cleve-**
**land Staples.**

Supreme Judicial Court of Maine.

Feb. 7, 1969.

Jerome G. Daviau, Waterville, for plaintiff.

Bradford H. Hutchins, Waterville, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from summary judgment in favor of City of Belfast and Central Maine Power Company.

In July of 1960 by reason of an order issued by the City Electrician of the City of Belfast, the Central Maine Power Company disconnected electrical service to the plaintiff's hotel for a period of approximately 10 days. Plaintiff complains against the City Electrician (Staples), the City of Belfast (City) and the Central Maine Power Company (Central Maine) alleging that the defendants, severally, without legal cause or justification, terminated the electrical service to plaintiff's hotel, the City and Staples doing the same "under the guise of enforcing an ordinance allegedly * * * authorizing and directing the City Electrician to exercise certain powers"

which ordinance was improperly enacted, and the Central Maine with lack of legal justification and "malice in law" by reason of such, and seeks consequential damages.

Seasonably Central Maine moved under Rule 56 M.R.C.P. for summary judgment based upon the pleadings, the records of discovery proceedings (interrogatories with answers, depositions, exhibits), City Ordinance and Rules of the Public Utility Commission. Summary judgment was ordered in favor of Central Maine. Plaintiff filed motion to reconsider, alleging an affidavit of one Page in support thereof and attached thereto, but there is no Page affidavit in the record.

According to the dates on the several papers, while plaintiff's motion to reconsider the summary judgment for Central Maine was pending, City filed motion for summary judgment based upon the same documents upon which Central Maine had relied, plus interrogatories posed by the City and answers thereto. Thereafter plaintiff filed an affidavit of one Otto which, by its caption, purports to support both plaintiff's pending motion to reconsider and its opposition to City's pending motion for summary judgment. Summary judgment for Central Maine was affirmed and also ordered for the City. Plaintiff appealed on the following grounds:

"A. Since the defense of all Defendants is predicated on whether or not public safety required the shutting off of electric power by Defendant's Central Maine Power Company, this poses a factual question of which there is conflicting evidence and therefore a jury trial would be required to determine the facts.

"B. Chapter 22 of the Belfast Municipal Ordinances, upon which all of the Defendants rely, violates the Plaintiff's rights under the Federal Constitution, to due process and equal protection for failure to provide sufficient standard or standards defining the so-called public safety.

"C. The City Electrician, under the Ordinance, is granted unlimited discretion and authority to order the interruption of electric service, in his entire discretion, without adequate standards, in violation of the Plaintiff's rights under the Federal Constitution.

"D. The Ordinance seeks to make the National Electric Code of the National Board of Fire Underwriters part of the Ordinance by reference, but fails to specify which year, which edition, and whether or not amendments to the National Electric Code are part of the Ordinance in question. If so, it seeks to endow the National Board of Fire Underwriters with the delegated power of amending the municipal ordinance at will, a legislative function which the City of Belfast does not legally have.

"E. All of the Defendants relied upon the revised ordinances of the City of Belfast, as to the City Electrician, Chapter 22. There is not any section in said ordinance that authorizes the City Electrician to shut off the power under the circumstances as they existed in this case.

"F. There was not any factual or legal basis for a finding, upon the facts as testified to by Mr. Staples in his deposition, that there was any endangering of the public safety at the time he ordered the shut-off of the electric power."

From the material before the Court on the motion for summary judgment the following undisputed facts were established. The City since 1923 had had an ordinance dealing with electrical wiring and appliances, which ordinance provided for the election of a City Electrician and established his duties.

The revised ordinances of the City of Belfast enacted and appropriately approved by a Justice of the Supreme Judicial Court in February of 1934 had, as Chapter 22 thereof, provisions relative inspection of electrical installations and a City Electrician. Of this Chapter, Section 6 gave the

Electrician authority "whenever in his opinion the public safety requires it" to direct a supplier of electricity to shut off the current and provided an hourly penalty for such time as said supplier failed to comply.

Section 26 authorized the Electrician to see that electrical wiring within the City should conform "to the National Electrical Code of the National Board of Fire Underwriters."

From the fall of 1958 to the time the facts occurred giving rise to the present controversy, the plaintiff's hotel had been subject to periodic inspection by the State Fire Inspector and the City Electrician, resulting in reports to the plaintiff in September of 1958, and November of 1959, listing a substantial number of conditions inconsistent with fire safety and requiring a change in wiring to conform to the National Electrical Code. The City Electrician had for a longer period been giving plaintiff verbal notices that alleged deficiencies would have to be cured.

In the summer of 1960 plaintiff had undertaken to comply with the State and City demands, but by July 5, 1960 the work had not been completed and on that date the electrical contractor engaged in the work had refused to continue without provisions for his pay. On this date the City Electrician determined that the conditions at the hotel were in violation of the Code and City requirements, and directed in writing that electrical service be discontinued, giving one copy to the plaintiff and one copy to Central Maine. Central Maine forthwith shut off plaintiff's supply of electricity, which "shut off" continued until July 15, 1960 when, after repairs by plaintiff, the City Electrician authorized the restoration of the service.

The decision of the City Electrician and the issuance of his "shut off" order was a result of the exercise of his own judgment and not as a result of any participation by the City government.

For this 10 day interruption of electrical service, plaintiff complains.

The only issue before this Court is the validity of the summary judgments granted the City and Central Maine.

Plaintiff urges that the City Ordinance having to do with the City Electrician and his authority is invalid because of unconstitutional vagueness. This issue is irrelevant, for reasons given below, in testing the duty of the City and Central Maine.

■ The responsibility, or lack of it, of the City is governed by Michaud v. City of Bangor, 159 Me. 491, 496, 196 A.2d 106. The City by official action did not direct the City Electrician to act as he did and the City Electrician acted as a public officer, not as an agent of the City. Though ultimately his conduct should prove wrongful, the City is not liable, and judgment in its favor was properly ordered.

Responsibility on the part of Central Maine must be founded upon either contract or tort. No claim of contractual violation is alleged. Whether or not this public utility in the production and distribution of electricity is exposed to tort liability for complying with the order of the City Electrician is the question.

■ Not only is the nature of electricity a matter of judicial notice, but both text and case law have recognized it as a dangerous commodity which must be strictly controlled. A producer and distributor of electricity is not an insurer, however, and its responsibility is measured by the law of negligence. Edwards v. Cumberland County Power & Light Co., 128 Me. 207, 212, 216, 146 A. 700.

The common law duty of a public utility company distributing electricity is summarized in Carroway v. Carolina Power & Light Company, 226 S.C. 237, 84 S.E.2d 728 (1954) in which the facts closely parallel those at bar.

"Since the electric wires in plaintiff's home were not owned or controlled by defendant, it was not charged with the duty of inspecting same to see that they

were in a safe condition and kept so, and ordinarily could not be held liable for any damage sustained as a result of such defective wiring." citing texts.

See also Dabbs v. Tennessee Valley Authority, 194 Tenn. 185, 250 S.W.2d 67 [1], 69 (1952), Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S.W. 773, [12–14] 1st col. p. 779 (1915).

"But where a public utility knows that the wiring in a customer's house is dangerous and continues to supply electricity to such home, it incurs liability for the consequences."

Citing leading cases to which are added Snook v. City of Winfield, 144 Kan. 375, 61 P.2d 101, [2, 3] 104 (1936), Johnson v. Alabama Power Co., 230 Ala. 91, 159 So. 695, [1] 696 (1935) and Smith's Adm'x, *supra*.

"(W)here such public utility knows of the defective condition, 'its duty is to stop and not to send its deadly current to the defective wiring of the consumer, and it is liable for injuries to person or property caused by breach of this duty.' "

The above quotations are from [1–3] beg. p. 730. See also Annot. 32 A.L.R.2d 244, § 9 at page 282 dealing with "Defects in Customer's Equipment" and Alabama Power Co. v. Sides, 229 Ala. 84, 155 So. 686 (1934).

The manufacture and distribution of electricity is also a subject of statutory concern to the Legislature and regulatory concern to the Public Utilities Commission, as in *Carroway*. Since the adoption of Chapter 129 P.L.1913 which created the Commission, the Commission has been authorized to make necessary rules and regulations for the execution of its authority (35 M.R.S.A. § 3) and by "Rules and Standards of Service for Electrical Companies" effective August 1, 1930, and to the date of this case not pertinently amended, Rule 26 provided inter alia that "where a dangerous condition is found to exist on the customer's premises, the service

may be discontinued without notice in advance."

Revised Statutes 1954 Chapter 100, §§ 93–102 provided (originating in Chapter 376 P.L.1949) standards for electrical equipment (§ 95), standards for installation (§ 94), authorized a municipality to provide an electrical inspector and inspection of electrical installations (§ 96) and expressed the authority for such inspection (§ 97).

■ Section 97 provided that when a duly authorized electrical inspector found electrical equipment "to be dangerous to persons or property because it is defective or defectively installed" the person responsible for such equipment "shall be notified in writing" to make such changes as necessary to place the equipment in reasonably safe condition, and "(i)n cases of emergency, where immediately necessary for safety to persons or property, the said electrical inspector * * * shall have the authority to immediately disconnect or cause the disconnection of any electrical equipment." By the terms of the 1949 Public Law, it applied to installations made after its effective date (August 6, 1949) and ordinances then existing in any city or town were not affected. We are not called upon to decide the relative significance of the City Ordinance and the statute. Their existence and terms are but a factor in determining what care Central Maine as an "ordinarily reasonable and prudent person" should exercise.

Plaintiff urges, indirectly, that the validity of the cases cited is premised upon actual defect in consumer's wiring as distinct from defect alleged by the City Electrician, and that the record here does not support a finding "that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 56(c) M.R.C.P. Assuming, without finding, that the record leaves a factual dispute as to the condition of the wiring in plaintiff's hotel and a legal dispute as to the validity of the City Ordi-

nance under which the City Electrician acted, our issue is more limited. Upon the basis of the Electrician's notice to Central Maine, without regard to the foundation of such notice, was Central Maine negligent in shutting off the electrical current to plaintiff's hotel?

From the authorities cited above, the statutory concern with the control of electricity and electrical public utility regulation, Central Maine, after notice from a public official with ostensible authority in the premises, that plaintiff's wiring was defective, would have continued to energize plaintiff's electrical system at its peril. Avoidance of this risk was not negligence.

Oral motion by plaintiff at argument for imposition of sanctions under Rule 74(e) M.R.C.P. denied.

Appeal denied.

Oral motion denied.