I. ERLICHMAN CO., INC., Appellant, *v.* ILLINOIS COMMERCE
COMMISSION *et al.*, Appellees.

Third District    No. 79-935

Opinion filed January 28, 1981.—Rehearing denied March 6, 1981.

Randall W. Moon, of O'Hern, Wombacher & Moon, of Peoria, for appellant.

Anne E. Valle and Stuart F. Gassner, both of Chicago and North Western Transportation Company, of Chicago (James E. Weging and Hercules F. Bolos, Special Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Peoria County affirming on administrative review the dismissal of appellant's complaint before the Illinois Commerce Commission (ICC) against the Chicago and North Western Transportation Company (C&NW) and the Illinois Department of Transportation (IDOT) requesting that the ICC prohibit removal of a spur railroad track serving appellant's business. For the reasons stated hereafter, we reverse.

On January 27, 1977, IDOT filed a petition with the ICC (Commission Docket 77-0047) seeking permission to extend a new street (the Lydia Street Connector) over a single industrial spur track belonging to C&NW located in Peoria, Illinois. The filing of this petition was part of an IDOT project to reduce traffic hazards and congestion in the area by changing the access to U.S. Route 24 (Federal Aid Route 63). In conjunction with the construction of the Lydia Street Connector, a spur track in Darst Street, also belonging to C&NW, was to be removed. The removal of this spur track would terminate rail service to the appellant (Erlichman), as the spur track was connected to track owned by Erlichman and located on its property. The appellant, however, was not named as a respondent in Commission Docket No. 77-0047, nor was it served with notice of the hearing held before a hearing examiner of the ICC on March 7, 1977. On April 13, 1977, the ICC granted IDOT's petition. No copy of the order granting IDOT's petition was ever received by the appellant.

Subsequently, Erlichman discovered that its rail service was being terminated as a result of the order in Docket No. 77-0047, and filed a complaint with the ICC naming both IDOT and C&NW as respondents (Commission Docket No. 78-0002). In its complaint, the appellant alleged that as an interested party it should have received notice of the ICC's proceedings in Docket No. 77-0047, and that termination of rail service pursuant to the ICC's order violated both section 49a of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 49a) and ICC General Order 27. On February 23, 1978, a hearing was held on Erlichman's complaint. On November 8, 1978, the complaint was dismissed. In its order, the ICC found, *inter alia*, that since January of 1972 the spur track had been used by the appellant on only one occasion (in 1974), the future use of the track was speculative only, public convenience and benefit required the removal of unused railroad street crossings, and neither section 49a of the Public Utilities Act nor ICC General Order 27 was violated by the ICC order in Docket No. 77-0047. The order of the ICC in Docket No. 78-0002 was subsequently affirmed by the circuit court of Peoria County, and this appeal followed.

The first contention of Erlichman on appeal is that its procedural due process rights were violated when, without receiving notice of the proceeding in Docket No. 77-0047, its rail service was discontinued pursuant to ICC order. A railroad is, by statute, a public utility (Ill. Rev. Stat. 1979, ch. 111 2/3, pars. 10.3(a), 10.5, 10.7 and 10.8). Consequently, the question that must be addressed is whether a public utility such as a railroad can constitutionally terminate service without first giving notice of the proposed service termination to those affected thereby.

Within the past decade there have been a great many cases dealing

with the subject of the constitutionality of public utility service termi-nations (see, *e.g.*, *Sterling v. Village of Maywood* (7th Cir. 1978), 579 F.2d 1350, 1353 n.7, *cert. denied* (1979), 440 U.S. 913, 59 L. Ed. 2d 462, 99 S. Ct. 1227). The basic argument in each of these cases is that the plaintiff's procedural due process rights were violated when the public utility (most often a gas, electric, or water company) unilaterally terminated service without first providing adequate notice and a hearing for the consumer. Whether the action is brought under the due process clause of the four-teenth amendment (U.S. Const., amend. XIV) or pursuant to section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1976)) courts in such cases have uniformly been faced with resolving two issues: First, is utility service a constitutionally protected property right; and second, is the requisite State action (or, in the case of a section 1983 action, action under color of State law) present (Note, *Fourteenth Amendment Due Process in Terminations of Utility Services for Nonpayment*, 86 Harv. L. Rev. 1477, 1483-84 (1973); Note, *Light a Candle and Call an Attorney—The Utility Shutoff Cases*, 58 Iowa L. Rev. 1161, 1161-62 (1973); Note, *The Right to Light: Due Process & Public Utility Termination*, 27 U. Miami L. Rev. 529, 530 (1973); Note, *The Constitutionality of Utility Terminations*, 47 U.Mo.K.C. L. Rev. 666, 669 (1979)). The latter issue, although most often presenting the greater problem for plaintiffs seeking to invoke procedural due process guarantees (see *Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449; Note, *Constitutional Law—Obtaining Due Process in Public Utility Pre-termination Procedures*, 76 W.Va. L. Rev. 492, 495 (1973-74)) is of no real concern here. The termi-nation of railroad service in the case at bar could only be accomplished by order of the ICC, a State agency. Therefore, there is in this case sufficient State action, in the form of the ICC order in Docket No. 77-0047, to trigger the procedural due process protections of the fourteenth amend-ment. The more important question here is whether rail service is in the nature of a property right that is to be constitutionally protected.

■■ "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (*Board of Regents v. Roth* (1972), 408 U.S. 564, 576, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708.) Certain attributes must adhere to these benefits if they are to rise to the status of a constitutionally protected property right. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. * * * He must, instead, have a legitimate claim of entitlement to it." (*Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.) One has a legitimate claim of entitlement to a benefit that is originated and defined in State law. (*Roth; Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554; *Perry v. Sinderman* (1972), 408 U.S. 593,

33 L. Ed. 2d 570, 92 S. Ct. 2694.) The benefit can have its origin in either the decisional law of the State (*Craft*) or its statutes. *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011.

■■ Section 32 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 32) provides that: "Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable." At least one commentator has noted that this statute establishes a consumer's right to adequate utility service (Note, *Light a Candle and Call an Attorney—the Utility Shutoff Cases*, 58 Iowa L. Rev. 1161, 1185 (1973)). We agree. We believe that section 32 of the Public Utilities Act creates a statutory entitlement to adequate utility service that is protected by the due process clause of the fourteenth amendment. Consequently, no public utility in this State, including railroads, can terminate service without first giving those consumers affected by the termination notice and a hearing. The termination of rail service to Erlichman pursuant to ICC order rendered in No. 77-0047 without notice to appellant deprived it of a constitutionally protected property right and was clearly in contravention of its rights to procedural due process of law.

We are cognizant of the fact that Erlichman subsequently had an opportunity to contest the termination of his rail service in proceeding No. 78-0002, and was unsuccessful in doing so. Its lack of success on the merits in No. 78-0002, however, does not justify the failure of appellees to give Erlichman its constitutionally mandated pre-termination notice. In fact, the inability of Erlichman to succeed on the merits in No. 78-0002 may be due in part to the fact that it did not receive timely notice of appellees' plan to remove the Darst Street spur, and by failing to be included directly in No. 77-0047 the burden of proof was effectively shifted to Erlichman to show that public convenience and necessity did not warrant removal of the spur and the concomitant termination of rail service. The burden of proof was, of course, upon the appellees to prove the contrary (see *Chicago, Burlington & Quincy R.R. Co. v. Cavanagh* (1917), 278 Ill. 609, 116 N.E. 128). The failure of Erlichman to receive notice (not a difficult task, considering that Erlichman was the only industry serviced by the spur) not only violated its constitutional right to due process of law, but was also unduly prejudicial in that it presented Erlichman with a *fait accompli* and a burden heavier than it should have to carry.

Because Erlichman's constitutional due process rights were violated when it received no notice of appellee's plan to terminate its rail service, the ICC order in No. 77-0047, with regard to Erlichman, is of no legal

effect. Further, as we have pointed out, the failure to receive notice also tainted the order in No. 78-0002, as the lack of notice wrongfully shifted the burden of proof in that proceeding to the appellant. As a consequence, the ICC order in No. 78-0002 must be reversed, as must the judgment of the circuit court of Peoria County affirming that order.

Our holding that due process of law requires the giving of pretermination notice and a hearing to those whose rail service is sought to be discontinued obviates any discussion of the remaining issues raised on appeal.

The judgment of the circuit court of Peoria County is reversed.

Judgment reversed.

SCOTT and STOUDER, JJ., concur.