558 So.2d 869 (1990)
C.E. TUCKER
v.
HINDS COUNTY, Mississippi, and Mississippi Power & Light Company.
No. 07-CA-59298.
Supreme Court of Mississippi.
March 21, 1990.
*870 William W. Ferguson, Raymond, for appellant.
Ben J. Piazza, Jr., Montgomery Smith-Vaniz & McGraw, Natie P. Caraway, and Edward C. Cohen, Wise Carter Child & Caraway, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., PRATHER, P.J., and PITTMAN, J.
PITTMAN, Justice for the Court:
C.E. Tucker filed suit in Hinds County Circuit Court against Hinds County and Mississippi Power & Light, alleging that he had been damaged when Hinds County and MP & L discontinued his electrical power. Hinds County included in its answer a defense of failure to state a claim, and both Hinds County and MP & L moved for summary judgment. The trial court granted Hinds County's motion to dismiss, and granted MP & L's motion for summary judgment. Tucker appeals, assigning as error:
I. THE CIRCUIT COURT WAS IN ERROR IN GRANTING HINDS COUNTY'S MOTION TO DISMISS ON THE BASIS OF THE DOCTRINE OF SOVEREIGN IMMUNITY.
II. THE CIRCUIT COURT WAS IN ERROR IN GRANTING MOTION FOR SUMMARY JUDGMENT OF MISSISSIPPI POWER & LIGHT COMPANY.

STATEMENT OF THE FACTS
C.E. Tucker was in 1983 a resident of Terry, Mississippi. He was employed by the Jackson Fire Department. Sometime in early 1983, there was a fire in a house owned by Tucker. The local fire department disconnected Tucker's electricity in the process of fighting the fire. Tucker was not living in the house at the time of the fire, but had been renting it, and the tenants had moved out two days before the fire. The major damage resulting from the fire was to a 20 X 20 area of the basement which had been used as a master bedroom, although there was some heat and smoke damage to the rest of the house.
In an effort to get his power restored, Tucker went to the MP & L office in Clinton. They told him that he would have to see someone at the Hinds County Permit Department. Tucker went there and consulted with W.W. Golson, Director of the Department. According to Tucker, he didn't want to repair his house, and told Golson this, but Golson refused to have the power turned back on unless Tucker got a permit. As a result Tucker applied for on May 4, 1983, and received two days later, a Hinds County Building Permit. He also received with the permit a copy of the County's inspection procedures. Tucker had his power restored very shortly after this. Tucker said that he had no idea that this was temporary service. Tucker never repaired the fire damage in his basement, preferring to block it off. He did paint over some of the smoke damage. Hinds County personnel inspected Tucker's house on January 19, 1984, with the observation that the site "[had] a construction pole and meter" and someone was "still doing work on [the] building." Hinds County personnel again inspected Tucker's house on August 28, 1986. The request for inspection contained the following notation: "T/S-House power box on house  no cover over breakers  Meter # 274-725  Also check to see if he has a shop he is operating." We assume that T/S stands for "temporary service." Another inspection was made on September 2, 1986, and the notation was once again concerned with whether Tucker was operating a shop. A third inspection *871 was made on September 4, 1986, and though much of the writing on the inspection form is illegible, it does contain the notation: "Leave note to call office concerning meter on house & expired permit ... talk to Sullivan ... Electric panel has wires outside of conduit going into side of it." The Hinds County inspector left a notice at the Tucker house on this September 4 visit, with the notice mentioning an "expired permit" and an "open electric panel outside," and directing that Tucker should "ask for Mr. Sullivan." The notice was signed by Leonard James.
Because of this notice Tucker called Sullivan at the Hinds County Permit Department. According to Tucker he was immediately transferred to W.W. Golson. Golson told him that his building permit had expired. Tucker replied that he didn't need a permit as he was through working on the house. Golson told him that he had to have a permit anyway, and for him to come in. Tucker went by the Department on September 8. According to Tucker, he met with Golson and two other men in Golson's office. Tucker refused to ask for another permit, and invited Golson to inspect his house or to do whatever else was necessary. According to Tucker, Golson then turned to one of the other men there and said, "Call MP & L. Have them disconnect Tucker's service. I'll think of a reason later." Tucker then left the office. According to Tucker his service was disconnected within a day or two.
Joe McClendon, a serviceman for MP & L, inspected Tucker's property on September 9, 1986. According to McClendon, the manner in which the meter base was connected to the house was improper and hazardous, and some of the wiring inside was also done incorrectly. McClendon stated that "[t]he overall situation was hazardous and did not meet electrical code specifications. Therefore, I was under orders to disconnect and did disconnect service on the property in question, the property of C.E. Tucker, due to the hazardous and dangerous situation." (Entered into record by Joint Stipulation) On September 11, Golson wrote to Eddie Toole, service manager for MP & L in Clinton. Golson mentioned the moving of a meter from a pole to the house without the house being approved for a meter, alleged that this was a violation of Article III, Section 300, Paragraph 1 of the Hinds County Zoning Ordinance, and requested "that no meter be placed on this dwelling until and only until the dwelling has been inspected and approved for electric service." Tucker wrote to Golson on September 19, reiterating his refusal to obtain a permit, and demanding that his power be restored within seventy-two hours. The power was not restored.
Tucker filed suit against Hinds County and MP & L in Hinds County Circuit Court on November 12, 1986. He alleged that Hinds County's actions had amounted to a taking of his property and property rights without due process, and were intentional, willful and wanton. He further alleged that MP & L had terminated his electrical service at a time when his account was current, and that it had done so wrongfully in violation of his due process rights. He asked for actual and punitive damages. Hinds County answered and asserted as defenses that Tucker failed to state a claim, and that it was protected from liability by the doctrine of sovereign immunity. Hinds County also counterclaimed against Tucker, alleging that he was in violation of the Hinds County Zoning Ordinance, and asking that he be enjoined from further occupancy or construction of his property until he obtained and complied with a building permit. MP & L answered and denied the allegations against it.
On July 9, 1987, MP & L moved for summary judgment. Hinds County likewise moved for summary judgment on August 21, 1987. MP & L's Motion for Summary Judgment was granted on March 8, 1988. Hinds County's Motion for Summary Judgment was not ruled on, as the Circuit Court, relying on Grantham v. Mississippi Dept. of Corrections, 522 So.2d 219 (Miss. 1988), found that Hinds County was immune from liability and dismissed Tucker's suit against it. C.E. Tucker, presumably still without power, has appealed both decisions.

*872 STANDARD OF REVIEW
A motion for dismissal under Miss. R.Civ.P. 12(b)(6) raises an issue of law. Lester Engineering Co. v. Richland Water and Sewer District, 504 So.2d 1185, 1187 (Miss. 1987); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 593 (1969). This Court conducts de novo review on questions of law. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987).
This Court also conducts de novo review of a lower court's grant of summary judgment. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). The applicable standard is as follows:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.
Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984).
The burden of demonstrating that no genuine issue of fact exists is on the moving party. The non-movant should be given the benefit of every reasonable doubt. Short, 535 So.2d at 63-64.

DISCUSSION OF ISSUES

I. THE CIRCUIT COURT WAS IN ERROR IN GRANTING HINDS COUNTY'S MOTION TO DISMISS ON THE BASIS OF THE DOCTRINE OF SOVEREIGN IMMUNITY.
Tucker argues in his brief that Hinds County's actions were violative of the United States and Mississippi Constitutions in two ways: (1) Hinds County ordered his electric power shut off without affording him due process; and (2) Hinds County, acting in conjunction with MP & L, caused him to lose his deposit with MP & L. Tucker cites two cases which have nothing to do with due process, only with taking private property without compensation.
The trial court found that Hinds County's sovereign immunity defense was valid as a matter of law, and dismissed Tucker's suit based on the 12(b)(6) defense raised in Hinds County's answer. A motion to dismiss made under Rule 12(b)(6) is not favored, and should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Martin v. Phillips, 514 So.2d 338, 340 (Miss. 1987). When considering a 12(b)(6) motion, the court's inquiry essentially is limited to the content of the complaint. Jackson v. Procunier, 789 F.2d 307, 309 (5th Cir.1986). The court must assume the factual allegations in the complaint are true, construe them in a manner most favorable to the non-movant, and decide if the facts alleged could give rise to an actionable claim. Rathborne v. Rathborne, 683 F.2d 914, 918 (5th Cir.1982). The court does not have to accept legal conclusions or allegations as to the legal effect of events which may be included in a complaint. Davidson v. State of Georgia, 622 F.2d 895, 897 (5th Cir.1980).
Both parties agree that sovereign immunity will not protect the political subdivision when there has been a violation by the subdivision of an individual's constitutional rights. Tucker relies on Williams v. Walley, 295 So.2d 286, 288 (Miss. 1974), where this Court stated that "when private property is taken without payment therefor, the courts are open to provide a remedy against the sovereign or any of its subdivisions. Otherwise section 17 of the Mississippi Constitution would be meaningless." Though Williams does not explicitly deal with a due process violation, it follows that to allow the sovereign immunity defense to block suits based on other provisions of the Mississippi Constitution *873 would render them just as meaningless. The question then appears to be, does Tucker allege a constitutional violation sufficient to withstand Hinds County's 12(b)(6) defense? In his complaint Tucker only alleges a due process violation and does not mention, at least with reference to Hinds County, that his property was taken without due compensation.
C.E. Tucker relies on both the due process clause of Fourteenth Amendment to the United States Constitution and Article III, § 14 of the Mississippi Constitution. Though the two are worded differently, they have been found to contain the same guarantee. See NCAA v. Gillard, 352 So.2d 1072 (Miss. 1977); Mississippi Power Co. v. Goudy, 459 So.2d 257 (Miss. 1984).
The first question to be considered is whether C.E. Tucker had a "property" interest, protected by the Fourteenth Amendment, in the continuance of his utility service. To claim a property interest in a service, a person must "have a legitimate claim of entitlement" to it, surpassing a mere "abstract need" or "unilateral expectation" of it. Board of Regents v. Roth, 408 U.S. 564, 574, 92 S.Ct. 2701, 2707-08, 33 L.Ed.2d 548 (1972). If Tucker possessed such an interest, and alleged that it was terminated by Hinds County without due process, then he has stated a claim sufficient to pierce the sovereign immunity defense of Hinds County. The seminal case involving property interests in one's utilities is Memphis Light Gas and Water Div. v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The Crafts had their utility service terminated several times because of a billing dispute. Looking to state law, the Supreme Court found that the Crafts had a property interest in the continuance of their utility service, citing Tennessee case law which found a distinction between the power company's right to cut off a customer's service for non-payment of a just service bill, and the non-existent right to do so when there was a bona fide dispute concerning the correctness of the bill, such as with the Crafts. Craft, 436 U.S. at 6, 98 S.Ct. at 1559. The Court also mentioned that MLG & W attempted to rely instead on "the general rule that a utility may terminate service for nonpayment of undisputed charges or noncompliance with reasonable rules and regulations." Craft, 436 U.S. at 6 n. 10, 98 S.Ct. at 1561 n. 10. Tennessee law further stated that a utility could not coerce a customer to pay a disputed claim, and could not terminate service without "good and sufficient cause." Craft, 436 U.S. at 6-7, 98 S.Ct. at 1559.
This Court has not considered or determined whether or not a subscriber has a "property" interest in continued service under Mississippi law. This Court has found in Mississippi Power Co. v. Goudy, 459 So.2d 257, 263 (Miss. 1984), that Mrs. Goudy as a consumer "had no specific vested property right in a fair and reasonable utility rate." Mississippi case law dealing with discontinuance of a consumer's utilities is in accord with that from Tennessee mentioned in Craft. When a consumer has failed or refused to pay an undisputed bill, the power company may discontinue service. See Central Louisiana Power Co. v. Thomas, 145 Miss. 352, 111 So. 142 (1927); Mississippi Power Co. v. Byrd, 160 Miss. 71, 133 So. 193 (1931). However, when there is a bona fide dispute as to what is owed, the power company may not discontinue power. See Mississippi Power Co. v. Cochran, 167 Miss. 705, 147 So. 473 (1933); Doherty v. Mississippi Power Co., 178 Miss. 204, 173 So. 287 (1937). State law creating a property interest could also be statutory law; however, we find no Mississippi statute dealing with this matter. After a survey of other states, it is clear that the overwhelming majority of courts which have considered this question have found that continuance of electrical power is a property interest worthy of protection under the due process clause of the Fourteenth Amendment. See Denver Welfare Rights Organization v. Public Utilities Commission, 190 Colo. 329, 547 P.2d 239 (1976); I. Erlichman Co. v. Illinois Commerce Commission, 92 Ill. App.3d 1091, 48 Ill.Dec. 448, 416 N.E.2d 721 (1981); Perez v. City of San Bruno, 27 Cal.3d 875, 168 Cal. Rptr. 114, 616 P.2d 1287 (1980); Dedeke v. Rural Water Dist. No. 5, 229 Kan. 242, 623 P.2d 1324 (1981); see also Freeman *874 v. Hayek, 635 F. Supp. 178 (D.Minn. 1986) (applying Minnesota law). Almost all courts considering this question also take into account the fact that utility service has become almost a necessity for safety and comfort in modern-day life. It is time that Mississippi law recognizes such a property interest.
The trial court dismissed Tucker's suit based on Hinds County's sovereign immunity. Both parties agree that sovereign immunity is no defense where a violation of one's constitutional rights are concerned. Finding that C.E. Tucker has a property interest in the continuance of his utility service, then he appears to have alleged a constitutionally viable claim, at least sufficient to survive a 12(b)(6) defense. There may be facts capable of proof under which Tucker could recover. Therefore, the dismissal as to Hinds County is reversed and remanded for further hearing on the claim of Tucker.

II. THE CIRCUIT COURT WAS IN ERROR IN GRANTING MOTION FOR SUMMARY JUDGMENT OF MISSISSIPPI POWER & LIGHT COMPANY.
Because MP & L's motion for summary judgment was granted, the Court's analysis of this claim is not restricted to the pleadings, as was the claim against Hinds County. All materials submitted in support and in opposition to the motion may be considered. One of the first questions to be considered comes from C.E. Tucker's complaint. It alleges that MP & L's actions were "done by cooperation with or direction of governmental authorities and were therefore done under color of state law and violated the constitutional right of [Tucker] to due process" and MP & L "took his property and property rights without due process of law, all to his damage." Tucker does not mention due process again, either in later pleadings or in his brief, at least with respect to MP & L.
Tucker in his brief lists eight alleged genuine issues of material fact which he claims preclude summary judgment in favor of MP & L. MP & L responds that issues 1-6 have only to do with actions or regulations of Hinds County. We agree. The alleged material issues of fact having to do with MP & L are whether MP & L had the right to disconnect Tucker's utility service, at a time when Tucker claims his account was current, and whether a hazardous condition actually existed at Tucker's residence which necessitated the termination of his utility service. Also, Tucker belately claims that MP & L never refunded his deposit. This is not developed in the record and is not considered here.
Authority is vested in the Mississippi Public Service Commission to regulate public utilities such as MP & L. Miss. Code Ann. § 77-3-2 (Supp. 1989). The PSC shall also "have power to prescribe, issue, amend and rescind such reasonable rules and regulations as may be reasonably necessary or appropriate to carry out the provisions of this article." Miss. Code Ann. § 77-3-45 (1972). Pursuant to this authority the PSC has promulgated Rules and Regulations Governing Public Utility Service. MP & L relies on the following rules as legal authority for its actions in shutting off C.E. Tucker's utility service:
Rule 7. Refusal to Serve Customers
A. Compliance by Customer. Any utility may decline to serve a customer or prospective customer until he has complied with all state and/or municipal regulations governing the service applied for and has also complied with the reasonable rules and regulations of the utility.
C. Hazardous Equipment. The utility may refuse to serve a customer if, in its best judgment, the customer's installation or equipment is regarded as hazardous or of such character that satisfactory service cannot be given. This rule shall not be construed as imposing any duty upon a utility to determine the safety or suitability of a customer's installation or equipment for the use intended.
F. Insufficient Grounds for Refusal to Serve. The following shall not constitute sufficient cause for refusal of service to a present or prospective customer:
... .

*875 (4) Violation of the utility's rules pertaining to operation of nonstandard equipment which interferes with service to others, or other services such as communication services, unless the customer has first been notified and been afforded reasonable opportunity to comply with said rules; provided, however, that where a dangerous condition exists on a customer's premises, service may be refused or discontinued without notice.

Rule 8. Discontinuance of Service
A. For Violation of Rules and Regulations. No utility shall discontinue service to any customer for violation of its rules and regulations nor for non-payment of bills without first having used due diligence to give the customer notice of such violation or delinquency and reasonable opportunity to comply with its rules and regulations or to pay his bills. In no case shall service be actually discontinued until after at least five (5) days' written notice shall have been given to the customer by the utility; provided, however, for fraudulent, careless, negligent, or unlawful use of the commodity or service, or where a dangerous condition is found to exist on the customer's premises, service may be discontinued without advance notice. Such notice may be given by the utility by mailing by U.S. Mail, postage prepaid, to the last known address of the customer.
(emphasis added). MP & L also relies on its service policy.
Tucker argues first that these rules cannot be followed blindly and that MP & L cannot shut off power just because it feels, in its best judgment, that a dangerous or hazardous condition existed. Tucker argues that whether such a condition existed at all is a genuine issue of material fact. (Affidavit of Thomas Long  Joint Stipulation) MP & L claims that the question is not whether such a condition actually existed, but whether MP & L, in its best judgment, determined such a condition existed. Also in controversy is the actual effect of the PSC rules under which MP & L acted. MP & L argues that these rules have the effect of law and there is authority that certain administrative rules have the force of law. Standard Oil Co. of California v. Johnson, 316 U.S. 481, 484, 62 S.Ct. 1168, 1169-70, 86 L.Ed. 1611 (1942) (War Department regulations); see also United States v. Mississippi Power & Light Co., 638 F.2d 899 (5th Cir.1981); Green v. United States, 460 F.2d 412 (5th Cir.1972).
Several jurisdictions have dealt with the liability of a power company in a fact situation such as this. In Carroway v. Carolina Power & Light Co., 226 S.C. 237, 84 S.E.2d 728 (1954), Carolina Power shut off a consumer's utility service without notice. It was acting pursuant to its own Service Regulations, approved by the South Carolina Public Service Commission, which authorized suspension of electricity without notice "in case of a condition on Customer's side of the point of delivery actually known by Company to be, or which Company reasonably anticipates may be dangerous to life or property." The South Carolina Supreme Court found that these rules and regulations had "the force and effect of law and were binding on the plaintiff, regardless of whether or not he agreed to them." The Court further noted that if there had been a fire, after Carolina Power had been made aware of the dangerous condition, then it surely would have been liable for not having shut off the utility service according to its own rules. Carroway, 226 S.C. at 246, 84 S.E.2d at 732.
A similar situation occurred in Windsor Hotel Co. v. Central Maine Power Co., 250 A.2d 194 (Me. 1969), where Central Maine Power shut off the electrical service of the Windsor Hotel pursuant to an order issued by the Belfast city electrician, after the electrician found electrical code violations at the Hotel. Summary judgment was granted in favor of Central Maine. Relying on the rules of the Maine Public Utilities Commission, and on the notice from the Belfast city electrician, the Supreme Judicial Court of Maine found that Central Maine was not negligent as a matter of law for following the directive of the electrician, saying that Central Maine "would have continued to energize plaintiff's electrical *876 system at its peril." Summary judgment was affirmed. Windsor Hotel, 250 A.2d at 198; see also Shaffer v. Georgia Power Co., 128 Ga. App. 84, 195 S.E.2d 758 (1973) (summary judgment affirmed in favor of power company which shut off electrical service based on its own rules and regulations, city ordinances, and potential liability for continuing service when dangerous condition was known).
MP & L has the discretion to act as it did in this case. MP & L was acting pursuant to PSC rules and its own service policy when it shut off C.E. Tucker's power. It relied on a directive from W.W. Golson, a county official with ostensible power to direct enforcement of zoning ordinances, and its own serviceman, Joe McClendon, who reported a hazardous and dangerous condition at the Tucker residence. If Tucker was treated unfairly, or was denied due process, it was at the hands of Hinds County. MP & L had the right, as a matter of law (indeed it may have had the duty), to shut off Tucker's utility service. Accordingly, the circuit court is affirmed.

CONCLUSION
Finding that the circuit court erred when it dismissed C.E. Tucker's claim against Hinds County, the judgment of the circuit court is reversed and remanded for further proceedings. Finding no reversible error in the circuit court's disposition of the claim against MP & L, the judgment of the circuit court in this part is affirmed.
AFFIRMED AS TO MP & L, REVERSED AND REMANDED AS TO HINDS COUNTY.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.