SOUTHWICK, Judge,
for the Court:
¶ 1. The City of Jackson appeals from an order of the Chancery Court of Hinds County that held that an apartment complex owner was not liable on a water bill since the arrearages predated the owner’s title. The City alleges on appeal that liability exists on an open account theory. On cross-appeal, the apartment complex owner contends that the chancellor erred in dismissing its substantive due process claim against the City. We affirm the chancellor in all respects.
*193 FACTS
¶ 2. On March 21, 1989, Camelot Apartments Limited Partnership (CALP) purchased the Camelot Apartments on Robinson Road in Jackson from Roclab-A Investors. At the time of the acquisition, the apartment complex had a past-due water bill balance of $28,016.33. Those bills dated from 1985 and 1986. The general financial problems of the then-owner led to foreclosure of a deed of trust and purchase by Roclab in June 1986. Following Roelab’s and then three-years later CALP’s purchase of the apartments, the City continued to supply water and sewage services. The bills differentiated between the amount due for current services and the amount of the arrearage. Roclab and CALP timely paid the amounts designated as “currently due” on their water bills. Each refused to pay the arrearage.
¶ 3. CALP never officially applied for a new water account. Albert Belmonte, a limited partner of CALP, testified that he instructed the apartment manager to inform the City of the change in ownership. The apartment manager testified that she contacted the City on numerous occasions concerning the new ownership and to notify the City that the arrearage was a result of the inactions of the prior owners. The City did not state what it would do about the situation.
¶ 4. On October 28, 1992, the City warned CALP of the pending termination of water and sewage services unless CALP agreed to pay the arrearage. CALP submitted payment for the amount currently due for the services and refused to pay more. CALP requested an administrative review of the pending termination of services.' In January of 1993 the Deputy City Attorney for the City conducted a review of the disputed water bill. The attorney concluded that CALP was responsible for the entire amount of the arrearage. The City took no action to terminate service.
¶ 5. On June 22, 1994, CALP filed a complaint in chancery court requesting declaratory and injunctive relief. After conducting a hearing on CALP’s motion for summary judgment, the chancellor held that the City was not entitled to recover under the theory of open account. The chancellor stated that CALP was not related to the prior owners, and thus CALP was not hable for the arrear-age. The court ordered the City to expunge the amount of the arrearage from CALP’s bill. The chancellor also rejected CALP’s separate claim of damages.
DISCUSSION
I. OPEN ACCOUNTS
¶ 6. Unpaid water and sewer services are the responsibility of the person or company that receives the service. When title to property is conveyed, case law indicates that the new owners are not responsible for any unpaid balance in the account. In Carnaggio Bros. v. City of Greenwood, 142 Miss. 885, 108 So. 141, 142 (1926), the supreme court held that a municipality furnishing electricity or water to a business could not require the new owners to pay the debts incurred as a result of the previous owner’s use of the services. The City of Jackson in effect concedes the point by stating that it has no policy of requiring new property owners to pay the water bills of former owners.
¶ 7. The City asserts that CALP is liable for the arrearage for this reason: CALP continued to use a water account created by the previous owners instead of opening a new account. Under its open account theory, the City contends that CALP’s payments were properly credited to the oldest outstanding balance, which predated CALP’s púrchase of the property. The City argues that the present balance due is therefore for the more recent water services during CALP’s ownership.
¶ 8. An open account is a “type of credit extended through an advance agreement by a seller to a buyer which permits the buyer to make purchases without a note of security and is based on an evaluation of the buyer’s credit.” Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 619 So.2d 908, 914 (Miss.1993). The supreme court has held that an account based on “continuing transactions between the parties which have not been closed or settled but are kept open in anticipation of further transactions” eonsti- *194 tutes an open account. Westinghouse Credit Corp. v. Moore & McCalib, Inc., 361 So.2d 990, 992 (Miss.1978).
¶ 9. In granting CALP’s motion for summary judgment, the chancellor found that CALP was not related to the prior owners. Therefore, the City was not entitled to recover the arrearage under the theory of an open account. We have already indicated that a business’s water bills are not a continuing account, the responsibility of the present and all future owners until paid. Carnaggio Bros., 108 So. at 142; see also Burke v. City of Water Valley, 87 Miss. 732, 40 So. 820, 821 (1906) (holding that city is not at liberty to withhold the supply of water from a premises until the arrears due from a previous tenant are paid). The court has concluded that failure to notify a city of a sale of property does not create liability; what would do so is an express agreement by the new owner to assume the indebtedness of the previous owner. Carnaggio Bros., 108 So. at 141-142.
¶ 10. CALP acquired the apartment complex several years after the water bill problem arose. Although CALP failed to comply with the City’s rule requiring a new customer to open a new account, there was evidence that CALP contacted the City on several occasions to give notice of the change in ownership. Even if CALP failed to follow the City’s formal new account procedures, which properly promoted efficient bookkeeping and convenience, the penalty is not liability for the old bill unless perhaps under an estoppel theory. There was ample evidence that the City became aware of the ownership change through CALP’s phone calls. There is also ample evidence that for years little was done with the arrearage other than to include the charge with each current bill. It appears that the City did not before CALP’s purchase and has not subsequently pursued the owner who in 1985 and 1986 incurred the bill, presumably because of that owner’s financial problems that led to foreclosure. There simply is no proof that the City was misled and failed -to seek other remedies by CALP’s failure to open a new account.
II. EXPRESS ASSUMPTION
¶ 11. The City also asserts that CALP is liable under a 1988 purchase and sale agreement entered into by Shore Renaissance and Roelab (the seller to CALP). Apparently Shore Renaissance was the name of the entity contracting to purchase the apartments, but when the deed was executed title was taken in the CALP name. The contract provided for the purchase price on closing to reflect typical adjustments and prorations for various charges. The prorations as defined by the agreement expressly included water and other utility charges. CALP had a right to offset the purchase price of the apartment complex by the amount of the arrearage owed by the seller. That offset did not reduce the amount the buyer effectively paid, but only deflected the prorated sums from the seller to other uses.
¶ 12. A review of the record fails to reveal what happened at the closing of the sale. There is evidence that CALP may have determined not to reduce the price paid Roelab by the water bill arrearage because the price paid already was being discounted for many other reasons. Regardless, failure to prorate by the unpaid water bill only meant that CALP decided not to be the bill collector for the City. It never had agreed to be the bill debtor. Since it appears Roelab had not incurred the bill, then neither party to the sale was liable and there was no reason to prorate for the water bill. At most a company that apparently had common ownership to CALP agreed in a sales contract to see that money that otherwise would go to the seller instead would go to the City. There is no evidence that the money was withheld.
¶ 13. A statute requires that an agreement to answer for the debts of another must be in writing and signed by the party to be charged. Miss.Code Ann. § 15-3-1 (Rev. 1995). Such an agreement also has to be an actual assumption of the debt, and not just a gratuitous agreement to be a conduit for funds. Even if the sales agreement outlived the closing of the sale, CALP or Shore Renaissance never agreed to make any of Ro-elab’s debts its own and pay that debt with its own funds.
III. SUBSTANTIVE DUE PROCESS
¶ 14. CALP contends that the chancery court erred in dismissing its substantive *195 due process claim against the City under 42 U.S.C. § 1983. CALP asserts that the City attempted to deprive the apartment complex of its right to receive water services unless CALP paid for the arrearage. By threatening to terminate the supply of water services, the City allegedly violated CALP’s constitutional right to substantive due process under the Fourteenth Amendment to the United States Constitution and Article III, Section 14 of the Mississippi Constitution.
¶ 15. The Due Process Clause of the Fourteenth Amendment provides in part “nor shall any State deprive ány person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV. This clause and Article III, Section 14 of the Mississippi Constitution have been interpreted to contain the same guarantees. See NCAA v. Gillard, 352 So.2d 1072 (Miss.1977).
¶ 16. CALP’s claim arises under the United States Supreme Court’s interpretation that due process has a substantive component. Substantive due process protects individual liberty against “certain government actions regardless of the fairness of the procedures used to implement them.” Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). There are two requirements for a Section 1983 cause of action for violation of the Due Process Clause. First, there must be a recognized “liberty or property” interest within the purview of the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Secondly, there must be an intentional or reckless deprivation of that interest under color of state law. Daniels, 474 U.S. at 327, 106 S.Ct. at 662-63.
¶ 17. The Supreme Court has concluded that “[a]s a general matter, a State is under no constitutional duty to provide substantive services.” Youngberg v. Romeo, 457 U.S. 307, 317, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1982). In Tucker v. Hinds County, 558 So.2d 869, 873-74 (Miss.1990), the Mississippi Supreme Court considered whether a customer had a property interest in the continuation of utility service. After conducting a survey of other states, the court concluded that the overwhelming majority of courts considering the issue found a “property interest worthy of protection....” Id. at 878. Recognizing the “fact that utility service has become almost a necessity for safety and comfort in modern-day life,” the court held that “it is time that Mississippi law recognizes such a property interest.” Id. at 874. Therefore, CALP successfully established that it had a recognized and protected property interest in the continuation of utility service.
¶ 18. However, CALP does not even allege that it was deprived of this property interest. Instead, CALP wishes damages and attorney’s fees for what we would have to find is a property interest in not being deprived of peace of mind about utility services. At most the City warned that service would be terminated if the water bill was not paid. Utility service is a property interest, but that was never deprived. Nothing in the Mississippi Supreme Court’s multi-state review identified the avoidance of concern about property interests as itself being a property interest.
¶ 19. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT AND CROSS APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE PARTIES.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
HERRING, J., concurs with separate opinion joined by BRIDGES, C.J., THOMAS, P.J., and HINKEBEIN and SOUTHWICK, JJ.