## MISSISSIPPI POWER CO. v. COCHRAN.

(Division A. April 17, 1933. Suggestion of Error Overruled, May 15, 1933.)

[147 So. 473. No. 30205.]

Baskin, **Wilbourn & Miller**, of Meridian, and **O. B. Triplett, Jr.**, of Forest, for appellant.

Percy **M. Lee** and **Frank Mize,** both of Forest, for appellee.

Argued orally by **C. C. Miller**, for appellant, and by **Percy M. Lee** and **Frank Mize**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal by the Mississippi Power Company from a judgment of the circuit court of Scott county awarding the appellee, W. J. Cochran, the sum of two thousand five hundred dollars as damages alleged to have been sustained by him because the appellant wrongfully discontinued furnishing him electric power for the operation of his cotton gin plant.

Prior to the fall of 1928, the appellee owned and operated a cotton ginning plant, using for that purpose steam power. During that fall he installed electrical appliances and began using electric power in the operation of this plant. On April 4, 1929, he became a customer of the appellant under a contract executed on that date. By the terms of this contract the appellant obligated itself to furnish electric power for the operation of appellee's gin plant at a fixed price for connected horse power, and a fixed price per kilowatt for all energy consumed in excess of one hundred eighty kilowatt hours per horse power. The contract provided that "in the event a new and reduced schedule of rates is made effective" the appellee was "to pay for the service delivered during the remainder of the term of this agreement at the rates set forth in the new schedule."

After this contract was executed, but before the appellee began using the electric power of the appellant, a reduction was made by appellant in gin rates, and the rate to appellee was finally so fixed that he was obligated to use for each ginning season a minimum of eleven thousand two hundred fifty kilowatt hours for which he was to pay five cents per kilowatt hour, and for all over this

minimum he was to pay at a rate of three cents per kilo-watt hour.

The contract further provided that bills for energy consumed should be rendered monthly, and if not paid within ten days, that the company might, at any time thereafter, upon five days' written notice, suspend service; and that if not paid within a further period of fifteen days, the company might, at its option, treat the contract as canceled and at an end. It further provided that the electric energy used by the appellee should be measured at the division switch by meters and instruments installed and owned by the appellant; that all transformers, transmission lines, switches, machinery, and materials up to and including the division switch, and all the company's metering equipment, wherever placed, should be maintained and owned by the company, and should, at all times, be subject to its inspection, repair, or alteration, and removable at its option, and that the appellee should supply without charge suitable buildings and accommodations therefor.

The appellee began using electric power under this contract at the beginning of the 1929 ginning season in August, 1929, at which time the meter installed by the appellant registered zero. He continued to use this power until December 24, 1930, at which time service was discontinued by appellant for the reason that appellee refused to pay the November, 1930, bill, which covered service from October 23, 1930, to November 22, 1930, which said bill was dated December 1, 1930. During the period intervening between the beginning of service and the rendition of the November, 1930, bill, the appellee paid all bills for service as rendered. He testified that in November, 1930, he became convinced that the total amount paid by him for service prior to that month was excessive, and that, when the meter was read on November 22, 1930, he demanded the privilege of inspecting and reading it. At that reading of the meter it showed that sixty thousand three hundred kilowatts had been consumed. At the fixed rate of five cents per KWH for a

minimum of eleven thousand two hundred fifty KWH per season, and covering two seasons, and three cents per KWH for all over this minimum, the appellee was obligated to pay a total sum of two thousand two hundred fifty-nine dollars for the entire period, according to the meter reading of sixty thousand three hundred KWH for the period. Having ascertained from his canceled checks and records that he had paid to appellant a total sum of two thousand two hundred twenty-one dollars and thirty-five cents for service up to November, 1930, the appellee tendered to the appellant the difference between two thousand two hundred fifty-nine dollars, the total amount due for the entire period according to the meter reading, and two thousand two hundred twenty-one dollars and thirty-five cents, the total amount paid, or thirty-seven dollars and sixty-five cents. The appellant refused to accept this tender in settlement of its November bill, and negotiations between them having failed to produce an agreement, service was discontinued on December 24, 1930.

The contract also provided that it should continue in force for one year from the beginning of service, not later than the 15th of August, 1929, and thereafter until the expiration of at least six months' written notice by either party of intention to terminate it.

In justification of its act in discontinuing service to appellee, the appellant offered evidence to the effect that, when the meter reading of current consumed by appellee's plant for the month of September reached its office, this reading indicated that very much less power had been consumed than would ordinarily be required to gin the number of bales of cotton that were reported to have been ginned during that month; that an investigation was immediately made, and it was discovered that a transformer at or near appellee's plant was burned out, resulting in the meter failing to register the full amount of electric current passing through it. The defective transformer was promptly replaced, but the witnesses

testified they did not know, and had no means of ascertaining, how long the transformer had been defective.

The appellant also offered evidence to the effect that at each meter reading of power consumed by gins in the territory served by the appellant, the number of bales of cotton ginned at each gin plant since the previous reading was ascertained, and from this information a general average of the amount of power properly required to gin a bale of cotton was determined; that when it discovered what it conceived to be an error in the amount of kilowatt hours used by the appellee during the month of September, 1930, it applied the average bale consumption to the number of bales that appellee was reported to have ginned during that month, and rendered him a bill for energy consumed in accordance with this estimate. The appellee paid this bill without protest, and made no objections to any bills rendered until he discovered, in November, 1930, that for prior months he had overpaid, according to the meter reading of current consumed for the entire period of service.

The appellant contends that a contract between an electric company and its patron providing for compensation upon the meter plan, or at a certain rate as measured by meters, presupposes that the meters will accurately record the current passing through them, and that, when the meter fails to accurately measure the current consumed, some other practical and efficient means may be used to measure the current actually used; and further that the method adopted in this case was efficient and practical.

It is undoubtedly true that in so far as the consumer's liability is concerned, a contract to pay for the amount of current used as measured by a meter means as measured by an adequate and accurate meter, where the meter is furnished by and is under the exclusive control of the electric company, and that, in case the meter is found to be inadequate and inaccurate, some other practical and efficient means may be used. It will be unnecessary to here decide whether, in a proceeding to collect for current consumed, this rule will apply in favor of the company,

where the meter is furnished by it and is under its exclusive control, the consumers having no access to the meter, and no means of determining its accuracy. We are clearly of the opinion that, under such circumstances, and particularly where the meter is not itself inaccurate, but its failure to correctly measure the power consumed is due to defective transformers, power lines, or plant machinery or equipment, the company cannot rightfully discontinue service pending the settlement of a reasonable controversy as to the accuracy of the meter and the amount of current consumed. Upon the question of liability the appellee requested a peremptory instruction to find in his favor, and we think this instruction should have been granted. The judgment of the court below as to the liability of the appellant will therefore be affirmed.

The contract between the parties was not for a definite or fixed term beyond one year, but was a continuing one providing that after the expiration of one year, either party thereto might terminate it by giving at least six months' written notice of intention so to do. The wrongful discontinuance of service without giving this written notice was actual and peremptory notice of the termination of the contract, and was such a breach of the contract as rendered the appellant liable for all damages accruing as a result of the breach within the six-month notice period. To establish the damages sustained by him by reason of the breach of the contract, the appellee was permitted to offer evidence as to the market value of his electrical equipment and cost of the installation thereof, the purchase price and cost of installing an oil-burning engine, the expense of operating the same, and the loss of profits during the remainder of the ginning season of 1930-31. The appellee did not secure the installation of other motive power for the operation of his plant until after the ginning season of 1930-31 ended, which was within six months of the breach of the contract, and any loss of profits for the remainder of that ginning season which was susceptible of proof with reasonable certainty was recoverable. The appellee offered evidence tending

to prove the profit earned on each bale of cotton ginned, and the loss of a large amount of ginning which was available for the balance of the season, which evidence was sufficiently definite to sustain a recovery for the loss of these expected profits. The other damages claimed and attempted to be proved, that is, the value of electrical equipment removed, the cost of new motive power, and the expense of operating it are not here recoverable.

There was no definite proof of any loss in the market value of the electric motor removed, and the cost or market value of a new engine, which will presumably be serviceable for many years, was not recoverable, and no expense of operation was incurred during the balance of the 1930-31 season. We do not think there was evidence of malice, willfulness, or intentional oppression which warranted the granting of instructions to the jury authorizing it to award punitive damages. The judgment of the court below will therefore be reversed in so far as it awarded damages, and the cause will be remanded for the assessment of damages only.

Affirmed in part and reversed in part.