Vic CARACCI

v.

**BROTHER INTERNATIONAL SEWING MACHINE CORP. OF LOUISIANA.**

Civ. A. No. 11896.

United States District Court
E. D. Louisiana.

Oct. 9, 1963.

David A. Harris, Jackson, Miss., and Steven R. Plotkin, New Orleans, La., for plaintiff.

Lucien M. Gex, Jr., New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

This action arises out of the alleged breach of a contract entered into between the parties on August 26, 1960, which was a contract of dealership and distributorship.

The contract made the plaintiff the exclusive dealer and distributor of the defendant's sewing machines in Jackson, Miss., and within a fifty-mile radius of Jackson city limits. They allege that the only exception was the Atlas Sewing Center, Inc., of Jackson, Miss., which may sell as dealer only.

By the terms of the contract, as alleged by Plaintiff, the defendant was obliged not to sell the machines to any other distributor in the fifty-mile radius of Jackson's city limits.

Defendant bound himself to establish the Brother Sewing Center in Jackson for the purpose of selling, servicing and distributing the machines. He alleges that he did this.

Plaintiff alleges breach on the part of the defendant in that the defendant sold machines to W. T. Grant & Co., B. F. Goodrich & Co., and numerous Western Auto Stores located in Jackson and other stores located within the 50-mile radius of the city limits. Plaintiff alleges that he can show that over 200 machines have been sold in violation of the contract.

Plaintiff alleges that he was obligated to sell at least 240 machines per calendar year and that he had sold 223. This inability to fulfill the obligation was caused by this breach of the contract. Defendant could terminate the contract if plaintiff did not sell the requisite 240 machines per calendar year by giving 60 days' notice.

Plaintiff alleges that the defendant cancelled the contract, but not on 60 days' notice.

Plaintiff seeks damages in the amount of $20,000.00 and a mandatory injunction of specific performance against the defendant so that defendant will honor the exclusive franchise and plaintiff may have his damages in lost profits.

The first defense is failure to state a claim upon which relief can be granted.

The second defense admits the existence of a contract, but denies that the contract, as alleged by plaintiff, is the true agreement between the parties, or that it is the entire agreement between them. They allege plaintiff's obligation to sell 240 machines per year and his failure to do so.

The third defense is that when the contract was signed it was understood that all national chain stores would be excluded and words to that effect were entered on plaintiff's copy of the contract.

The fourth defense is that during the contract defendant did not sell machines

to any other concern except the Atlas Sewing Machine Company and to the plaintiff.

The fifth defense is that their agent was without authority to enter into such a contract that sought to include chain stores.

The sixth and final defense is that the contract, if the agent had such authority, was a Louisiana contract and null and void because it is subject to a potestative condition.

This matter proceeded to trial without a jury and all pertinent issues were thoroughly briefed by both plaintiff and defendant. Defendant urged in its brief that there was no evidence of operating cost or overhead expense and that the plaintiff, therefore, had failed to prove his net loss, if any, as compensatory damages with the degree of certainty which the law requires.

Thus, made acutely aware of the validity of defendant's position the plaintiff urged by way of a petition the reopening of this case in order to produce additional evidence. Over the opposition of the defendant this court decided in the exercise of its sound discretion to reopen the case for the limited purpose of showing plaintiff's costs of operation in order that a net profit figure might be determined as the basis for the award of damages.

■ The trial court may properly look with more favor upon a motion to reopen made after submission, but before any indication by it as to its decision, Bowles v. Six States Coal Corporation, D.C., 64 F.Supp. 651, than when the motion comes after a decision has been rendered although findings of fact and conclusions of law have not been formally made and judgment entered. Rue v. Feuz Construction Company, D.C., 103 F.Supp. 499. This is because the lower court has the feel for the case that an appellate court can seldom have and the trial court's ruling is subject to reversal only in a rare case where abuse is clearly shown, Walz v. Fidelity-Phoenix Fire Insurance Company, 6 Cir., 10 F.2d 22,

Cert. Den. 271 U.S. 665, 46 S.Ct. 481, 70 L.Ed. 1140.

■ Even though there is no express statutory provision of substantive law specifically allowing the reopening of a trial, the court finds that such has become a rule of law supplied by the jurisprudence. It appears to be a cannibalization of those qualities found in Rules 59 and 60, Federal Rules of Civil Procedure, New Trials and Relief from Judgment or Order respectively, geared by the philosophy of Rule 1, that is, the *"just, speedy, and inexpensive determination of every action."*

In the case of Schick Dryshaver v. General Shaver Corp., D.C., 26 F.Supp. 190, it was held that the reopening of that case while under advisement did not constitute a motion for a new trial under Rule 59. The purpose of such a move is to seek the right to offer additional evidence before the Court has reached a final decision thereon, so that the Court may have all of the facts upon which it can render full justice on the merits of plaintiff's cause of action.

■ Where the additional evidence is presently available, the trial court could and did in the interest of fairness and justice, permit the case to be reopened after both sides had rested and submitted the case for decision.

Alaska United Gold Min. Co. v. Keating, 116 F. 561 (9th Cir., 1902).

Triumph Hosiery Mills, Inc. v. Triumph Intern. Corp., 191 F.Supp. 937 (D.C.N.Y.1961).

There were two contracts introduced into evidence, one was plaintiff's duplicate original (p. 14) and the other defendant's duplicate original (p. 15). These contracts were identical in every respect with the exception that defendant's copy contained words to the effect that all national chain stores were excluded from this exclusive distributorship agreement. This court at the close of the trial announced that the court was of the opinion that the defendant's copy was the valid and binding agreement between the parties.

Mr. Emanuel Harris, who was the defendant's general manager at the time of the confection of the contract and who signed the contract on behalf of the defendant, testified that the words excluding the national chain stores were inserted at the time the contract was signed. He did not know why the words were not included in the plaintiff's copy, but testified that it was definitely understood by the plaintiff that the national chain stores were to be excluded. He further testified that it would have been ridiculous for him to sign a contract which would have cut out a large national chain store, such as Western Auto that purchased thousands of machines over the nation, in order to give plaintiff an exclusive distributorship whereby he was obligated to purchase only 20 machines per month. Further corroborating his testimony, Harris testified that plaintiff was well aware at the time of signing of the contract that defendant was selling machines to Western Auto. On numerous occasions plaintiff saw Wizard machines (which was the label used by Western Auto) in defendant's office in New Orleans, and knew that some of these machines were destined for shipment to stores in Jackson, Mississippi.

Mr. Fred Miller, defendant's general manager, who dealt with plaintiff during the contractual period, testified that plaintiff was at all times aware that Brother machines were being sold by Western Auto Stores in Jackson. He testified that plaintiff had seen the machines in defendant's office; that on one occasion plaintiff even asked him "how Western Auto was doing with their sales in Jackson". On another occasion plaintiff requested a certain model which was being sold by Western Auto and Miller advised him that he had better not buy that machine, since he would be competing with Western Auto and that plaintiff, as a specialist, could not successfully compete with a chain the size of Western Auto. The plaintiff agreed with him and decided not to buy that model. Miller testified very positively that plaintiff

never, during the term of the contract, protested these sales, that plaintiff never expressed any disfavor or request or demand that defendant stop selling machines to Western Auto in Jackson.

■ Plaintiff's testimony on this point is unbelievable. He testified that sometime during the term of the contract he discovered that Western Auto was selling Brother machines and that he telephoned Miller and protested. However, he says that after his protest they continued to sell machines in Jackson. Although he alleges this was having a harmful economic effect upon him, he did not see fit to write one letter at any time or to make formal protest. The evidence overwhelmingly proves that the national chain stores were intended by the parties to be excluded from the contract and that plaintiff's claim that they were not is without merit.

So it is found and decreed that plaintiff and defendant entered into a binding, subsisting contract for the exclusive sale of Brother Sewing Machines to include Jackson, Mississippi, and its environs within a radius of 50 miles. The term of this contract was for five years and bore the date August 26, 1960. The sole exception was that the defendant could in no way be barred from the continued sale of machines to national chain stores. This court recognizes the contract containing this exception to be the contract sued upon.

■■ On August 25, 1961, defendant wrongfully repudiated the contract, and in doing so, failed to give plaintiff the 60-day notice as required by the contract terms. In so doing the defendant failed to assign any reasons for this drastic action and so relieved the plaintiff of his contract obligation to sell 240 machines per year. Even if plaintiff was not relieved of this obligation the plaintiff had not failed to make the minimum sales since it is the court's opinion that the minimum requirement was intended to apply to the calendar year of 1961 which had four months and five days yet to run.

The final question to be decided is the amount of damages to which plaintiff is entitled.

■ On breach of a contract to give the plaintiff an exclusive distributorship he is entitled to recover the profits he would have made on transactions entered into by the principal through others, or by the principal himself. 5 Williston on Contracts (Rev.Ed.1937) Sec. 1406. Cincinnati Siemens-Lungren Gas Illuminating Co. v. Western, etc., Co., 152 U.S. 200, 14 S.Ct. 523, 38 L.Ed. 411 (1894). Wells v. National L. Ass'n 99 F. 222 (5th Cir., 1900). Corbin v. Taussig, 137 F. 151 (3 Cir., 1905). Schiffman v. Peerless M. C. Co., 13 Cal.App. 600, 110 P. 460. E. J. Brach & Son v. Stewart, 139 Miss. 818, 104 So. 162, 41 A.L.R. 1172.

■ The cardinal principle as to damages for breach of contract is that the defendant shall make complete satisfaction to plaintiff for all damages sustained by him by reason of the breach, including damages for loss of future profits. Vicksburg & M. R. Co. v. Ragsdale, 46 Miss. 458 (1872); United Press Ass'ns. v. McComb Broadcasting Corp., 201 Miss. 68, 28 So.2d 575, suggestion of error overruled 201 Miss. 68, 30 So.2d 511 (1947). Beach v. Johnson, 102 Miss. 419, 59 So. 800 (1912); Mississippi Power Co. v. Cochran, 167 Miss. 705, 147 So. 473 (1933).

■ A party who has broken his contract cannot escape liability because of the difficulty of finding a perfect measure of damages; it suffices that the evidence furnishes sufficient data for an approximate estimate of the amount of damages. Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363 (1938); Delta Table & Chair Co. v. Yazoo & M. V. R. Co., 105 Miss. 861, 63 So. 272 (1913); Montgomery Ward & Co. v. Hutchinson, 173 Miss. 701, 159 So. 862 (1935).

The plaintiff, on the original trial, introduced a mass of invoices showing sales by Brother to himself and sales by Brother to other dealers.

■ The record reflects that plaintiff earned gross profits of $17,000.00 for the year from August 1960 to August 25, 1961, the date on which the contract was cancelled. When the case was reopened plaintiff showed a total overhead and sales cost in the amount of $6,569.09 (2nd Transcript page 12) for the year, leaving a net dealer profit of $10,430.91. After the contract was summarily cancelled plaintiff did not realize and did not attempt any further purchases of Brothers sewing machines under the contract. Since this contract had a four-year period yet to run it would seem proper to assess damages on the net dealer profit which plaintiff would have earned for the remaining 4 years of the contract. When the plaintiff testified (2nd Transcript, Page 24) at the opening of this case, August 15, 1962, he stated that after the trial of this case in chief June 25, 1962, he ordered sewing machines from Brothers and they (10 in number) were immediately shipped. Plaintiff testified that the only reason that he quit ordering machines after August 25, 1961, when the contract was terminated, was because of the law suit; that after the trial had been completed on June 28, 1963, he felt free to begin ordering again and his attorney, learning of this, cautioned him not to do it any more. (Transcript, Page 32)

■ It is obvious that plaintiff could still have bought machines after contract termination but he would have lost the 30-day credit term and the monopoly that he enjoyed under the contract. It is reasonable to believe that his operation in a protected area where he would have had exclusive rights would have materially increased the volume of business.

Taking all of this into consideration the court feels that plaintiff should receive one full year of lost profits or $10,430.91. In addition this court will award the plaintiff $10,430.91 for each of the remaining contract years, less the profit he would have reasonably made in selling machines available to him without an exclusive contract which the court assesses at 66⅔% of the normal profits

for each of the remaining years, or $10,-430.91, the amount of damages due to plaintiff totalling $20,861.82. The record is not sufficiently clear on the subject of loss of profit as a distributor, hence the court will disallow any claim for this alleged damage.

It is ordered by the court that there be judgment herein in favor of plaintiff, Vic Caracci, and against the defendant, Brother International Sewing Machine Corp., of Louisiana, in the sum of $20,-861.82 with legal interest at 5% from date of judicial demand until paid, and all costs of this proceeding.