**In re ORFA CORP. OF AMERICA (DEL.), Debtor.**

**ORFA CORP. OF AMERICA (DEL.) Plaintiff,**

v.

**Alexander L. CAPPELLO, T. Kent Graham, Wolf Von Teichman, Gerard K. Cappello, Ronald P. Baldwin, Richard R. Irvin, William B. Ballhaus, Gerd Merz, D. Hunt Ramsbottom, Jr., R. Eric Miller, Bruce Energy Centre Limited and Euro American Capital Corporation, Defendants.**

**Bankruptcy No. 90–11254S.**
**Adv. No. 90–0175S.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 20, 1990.

Order July 20, 1990.

---

Gary P. Lightman, Allen B. Dubroff, Astor, Weiss & Newman, Philadelphia, Pa., for debtor.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

Alan C. Gershenson, Earl T. Stamm, Earl Forte, III, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for movants.

Matthew H. Krekstein, Schwartz & Krekstein, Philadelphia, Pa., for Unsecured Creditors' Committee.

Richard L. Berkman, Dechert Price & Rhoads, Philadelphia, Pa., for Sec. Pacific.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before us is a motion asking us to reconsider our Order of April 3, 1990, which denied a motion to dismiss this bankruptcy case premised on the theory that the corporate resolution of the Debtor authorizing the filing was promulgated by an improperly-constituted Board of Directors of the Debtor corporation at a meeting at which no quorum of even the improperly-constituted Board was present.

We affirm our holding that the Board which authorized the filing was indeed the properly-constituted Board of Directors of the Debtor. The issue of whether a quorum of the Debtor's Board was present at the meeting at which the filing was autho-

rized is more problematical. We believe that a quorum was present, because it appears that a Director who appears at a Board meeting, even for a short duration and under protest that the Board was improperly constituted (which protest we find lacks merit), should be counted as present at the meeting for the purpose of making a quorum. However, it appears that, even if a quorum were not present, the Board's actions could have been, and allegedly were, ratified at a meeting held shortly after the hearing, at which a quorum clearly was present. Therefore, in an abundance of caution, we will exercise our discretion to reopen the record on the underlying motion to dismiss this case and allow testimony of this alleged ratification and any rebuttal evidence pertinent thereto to be presented.

## B. PROCEDURAL HISTORY

The Movants in the motion to dismiss and the instant motion for reconsideration are an eight-body group who allege that they were duly elected as members of the Debtor's Board of Directors on December 11, 1989, effective ten days after the dispatch of an Information Statement of January 29, 1990 ("the Info Statement"), prepared by the Debtor pursuant to Section 14(f) of the Securities Exchange Act, 15 U.S.C. § 78n(f) ("the SEC Act"). The Movants claim that the four votes of the six contemporary members of the incumbent Board ("the old Board") at the meeting of March 15, 1990, in support of the resolution to authorize the bankruptcy filing, were legally insufficient to authorize the filing.

Immediately after two days of testimony on March 29, 1990, and April 2, 1990, on the motion to dismiss the case, counsel for both the Movants and the Debtor pressed us for a decision on the motion, since uncertainty as to how or whether this case would proceed would exist during any period that we held the matter under advisement. Although expressing doubt that either party or the court had sufficiently researched the pertinent legal authorities, we ruled from the bench, at the end of the proceedings on April 2, 1990, that the bankruptcy filing was valid. We followed our bench ruling with a brief Order and Memorandum of April 3, 1990.

On April 12, 1990, the Movants filed what they termed a Motion "to Alter and Amend Findings of Fact and Conclusions of Law, to Open Order and for Reconsideration." No Bankruptcy Rule ("B.Rule") or Federal Rule of Civil Procedure ("F.R.Civ. P.") was expressly cited as authority for this filing in either the body of the motion itself or even in the Movants' lengthy opening Brief filed in support of this motion. The Debtor, in a Response of April 20, 1990, supported the court's findings and argued that the instant motion improperly invoked F.R.Civ.P. 52(b) to urge this court to change its result on the basis of the record presented, as opposed to, as the Debtor alleged that F.R.Civ.P. 52 was confined, simply asking this court to make additional findings.

This motion was listed for a hearing on May 9, 1990. At that time, we granted the Movants' request that we entertain briefing on this motion, which the Movants indicated that they, for their part, had nearly completed drafting. We therefore entered an Order of May 10, 1990, indicating that we would consider this motion as timely filed pursuant to B.Rule 9023, which incorporates F.R.Civ.P. 59, and directing that the Movants and the Debtor file their Briefs addressing this motion on or before May 15, 1990, and May 23, 1990, respectively.

We ultimately received a 59-page Brief from the Movants on May 15, 1990; a 29-page Brief from the Debtor, filed belatedly on May 25, 1990, by permission of the court; correspondence of May 29, 1990, and May 30, 1990, from both parties, mostly addressing the issue of whether this court could appropriately consider the purported ratification of the March 15, 1990, motion authorizing this bankruptcy filing at an April 6, 1990 meeting; and a five-page Reply Brief of the Movants, filed June 1, 1990, by permission of the court, contending that we could not consider the occurrences at the April 6, 1990, meeting at this juncture.

In order to better understand the context of this motion and the underlying substan-

tive facts, it is helpful to review our Order and Memorandum of April 3, 1990. Although this document is published, the publication is presently only at 1990 WESTLAW 39728. We will therefore attach a copy of this document as Appendix "A" to this Opinion. We acknowledge that this submission is not of the quality we would normally demand in a published product. However, we would also comment that, despite our fear that we might have overlooked significant relevant issues, authorities, and arguments in the April 3, 1990, decision due to the expedited decision-making process, which partially explains our willingness to allow the briefing on the motion as requested by the Movants, and despite the copious submissions of the parties in reference to this motion, there is an apparent paucity of relevant authorities. As a result, we find that our analysis of the pertinent issues and arguments on April 3, 1989, was not seriously deficient. We are therefore unwilling to alter very much of our Order and Memorandum, even at this presumably enlightened juncture.

The centerpiece of the Movants' submissions is the contention that no quorum was present at the March 15, 1990, meeting where the bankruptcy filing was authorized. This represents some movement from the Movants' submissions and arguments prior to and at the hearing, of which the main thrust was the contention that the actions of the old Board on March 15, 1990, were invalid because they were not those of the whole Board, which they argued included them. The Movants' apparent perception of the relative weakness of their argument that they were duly-elected to the Debtor's Board is, we believe, accurate. This argument, in the light of further, we might say exhaustive, consideration, rather apparently cannot succeed.

C. WE REAFFIRM OUR CONCLUSION THAT THE MOVANTS NEVER BECAME DIRECTORS OF THE DEBTOR.

■ The Movants present the following arguments, to which we will respond seriatim, in support of their continuing contention that they are indeed members of the Debtor's Board of Directors. Firstly, they claim that the Board directorships were definitely and with requisite certainty and finality increased from eight to fifteen at the December 11, 1989, Board meeting, and at least the election of the three Movants named in the resolution of December 11, 1989, should be valid. Cited in support of this argument is *Rafal v. Geneen*, C.A. No. 72–536, CCH FED.SEC.L.RPTR. ¶ 93.505 (E.D.Pa.1972), an otherwise unreported decision of present Third Circuit Court of Appeals Chief Judge A. Leon Higginbotham. *Rafal* involved an attempt to enjoin a stockholders' meeting at which 20 directors were to be elected because of a corporation's failure to disclose the pendency of lawsuits against thre of the candidates for directorships in the requisite SEC info statement. Judge Higginbotham refused to enjoin the meeting entirely, preventing only the election of the three candidates against whom lawsuits were pending from proceeding, but allowing the election of the 17 other candidates to proceed.

The underlying facts and the thrust of our holdings in our Order and Memorandum of April 3, 1990, were significantly different from those in *Rafal*. We concluded that the failure of the December 11, 1989, resolution to name most of the new directors, *taken together with the following facts*, indicated that the Board action on December 11, 1989, was not meant to be a certain and final appointment of the Movants to the Board: (1) The old Board, without the participation of any of the Movants, continued to act as the exclusive *de facto* Board of the Debtor, in the face of only mild protestations from any of the Movants, through (and after) March 15, 1990: (2) The Debtor's Info Statement was admittedly defective, at least to some degree, and all parties concurred, albeit with different degrees of belief of the necessity to do so, that a new Info Statement needed to be sent out before the election of the new Directors was perfected; and (3) The Info Statement was indeed significantly defective, as the two factions of the Movants were unable to agree on the actual degree of control which Bruce Energy Center, Ltd., the leader of one of the factions, actually had over the Debtor's actions.

In *Rafal*, by way of contrast, the deficiencies in the info statement in issue related only to three of the appointed directors, as opposed to the broad issue of the actual control of the corporation, as was in issue here. The holding in *Rafal* that the omission of disclosure of the pending lawsuits against three of the candidates for directorships was "material" is consistent with our conclusion that any significant defect in the Info Statement cannot be overlooked. Another similarity exists. By granting the relief of enjoining the entire Board meeting from proceeding, Judge Higginbotham would have paralyzed the corporation. Here, the Debtor would have been effectively paralyzed by a ruling in favor of the Movants, since the validity of all of its actions from December 11, 1989, to date would have been placed in question. Like Judge Higginbotham, we are inclined towards allowing a corporation's *de facto* directors to act validly on behalf of a corporation without interruption.

The Movants also argue, with some irony, see page 805, *infra*, that the old Board members ratified or acquiesced in the validity of the election of the Movants to the Board because most of them voted in favor of the motion to add the Movants to the Board at the December 11, 1989, meeting. This argument begs the question of the finality of the appointment of the Movants to the Board as of December 11, 1989. If the Movants' appointment was tentative only, and was conditional upon the dispatch of an accurate Info Statement and the expiration of the 10–day waiting period thereafter, as we found, then the incumbent directors had no reason to act expeditiously to disclaim the Movants' status of Directors, as the time for their becoming Directors never ripened. Secondly, once again, the old Board members continued to act as the *defacto* complete Board of Directors of the Debtor without the inclusion of the Movants. This course of conduct hardly reflected acquiescence of the old Board with the conclusion that the Movants had immediate standing to sit as Board Directors. Thirdly, no explicit action was ever taken by the old Board to ratify the Movants' standing as Board members. We note that the first explicit action of the old

Board relating to the Movants' status was a resolution, on March 15, 1990, rescinding the agreements reached at the December 11, 1989, meeting.

In sum, we are not prepared to retreat or retract from our conclusion that the Movants never became Directors of the Debtor's Board.

D. **THE MOVANTS ARE CORRECT THAT THE PRESENCE OF FIVE DIRECTORS WAS NECESSARY TO CONSTITUTE A QUORUM AT THE MARCH 15, 1990, MEETING.**

■ We note that, in some respects, our discussion in the April 3, 1990, decision regarding the composition of the old Board and its legality to act was in error. Firstly, we erred in stating that the Board, as of March 15, 1990, consisted of seven, as opposed to eight, members. Our statement that the Board resolution of December 11, 1989, assumed a seven-member composition in order to give the Movants a majority voice on the prospective 15–member Board by having the power to elect eight directors was incorrect. As the Movants correctly point out, the resolution actually provided that the Board consisted of *eight* members. Therefore, it was obviously contemplated in the motion that one of the eight Movants was filling the pre-December, 1989 Board vacancy, and that the other the other seven Movants were filling newly-created seats on the Board.

Secondly, we erred in suggesting that three of the five Directors remaining after the resignation of two additional directors might constitute a Board quorum. As we noted, the decision in *Bruch v. National Guarantee Credit Corp.*, 13 Del.Ch. 180, 184–85, 116 A. 738, 740 (1922), is clearly to the contrary, holding that a majority of the *total* directorships, as opposed to merely directorships *filled*, need have been represented at the meeting to constitute a Board quorum. This holding of the *Bruch* case is not, as we suspected, a minority view, or one limited to its facts, but rather expresses a principle which is reiterated in several of the pertinent Delaware cases, *see Blish v. Thompson Automatic Arms Corp.*, 30 Del.Ch. 538, 579–80, 64 A.2d 581, 601–02 (1948); and *Belle Isle Corp. v. MacBean*,

30 Del.Ch. 373, 61 A.2d 699 (1948), and represents the generally-recognized law of all American jurisdictions. *See* 18B AM. JUR.2d 353–54 (1985).

### E. HOWEVER, A QUORUM OF FIVE DIRECTORS WAS PRESENT AT THE MARCH 15, 1990, MEETING, RENDERING THE RESOLUTIONS ENACTED THERE VALID.

■ There is little doubt that four directors, including the newly-elected Regan Wilson, were present at the March 15, 1990, meeting. There is, however, a question as to whether Anthony Cappello ("Cappello"), an ally of the Movants who called in to the meeting, but then disconnected himself from the meeting in protest of its existence, should be counted as being "present" for quorum purposes. If Cappello is counted for quorum purposes, the four votes of the Directors remaining at the meeting would have been sufficient to carry the March 15, 1990, motion to file the instant bankruptcy case.

The Movants argue that Delaware corporate law is "silent" on the subject of whether a Director appearing at a meeting, but then leaving as a protest, is counted for quorum purposes, but insist that the following excerpt from Article III, ¶ 6 of the Debtor's By-laws precludes the counting of Cappello as present for quorum purposes:

The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

We fail to see what relevance the foregoing passage has to the issue at hand. The issue at hand is not whether Cappello received notice of the meeting, nor is it whether he waived the right to receive such notice. These are, however, the only issues addressed by the provision cited. We therefore disagree with the Movants' suggestion that the By-laws of the Debtor address the issue of whether Cappello should be counted as present at the March 15, 1990, meeting for quorum purposes. We must therefore resort to the pertinent Delaware corporate law for an answer.

In this respect, we note that we also cannot agree with the Movants' assertion that the pertinent Delaware corporate law is "silent" on the subject. In *Hexter v. Columbia Baking Co.*, 16 Del.Ch. 263, 267–69, 145 A. 115, 116–17 (1929), the court determined that the departure of shareholders who attended the beginning of a shareholders' meeting did not destroy the quorum which their presence had previously created. While the *Hexter* court suggests that its ruling would not apply to Directors who failed to remain present at a Directors' meeting, it makes this distinction because the state corporate law did not at that time include the following sentence subsequently added to DEL.CODE ANN., tit. 8, § 141(b):

The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors unless the certificate of incorporation or the bylaws shall require a vote of a greater number.

Speaking of the impact of the addition of this last sentence to § 141(b) upon the *Hexter* holding, D. DREXLER, L. BLACK, A.G. SPARKS, III, DELAWARE CORPORATION LAW & PRACTICE, § 13.02[4], at 13–6 to 13–7 (1990) ("Drexler"), state as follows:

In a 1929 case [*Hexter*] holding that the departure of stockholders from a stockholders meeting where a quorum was present at the outset could not break the quorum, the Court of Chancery observed in a dictum that the rule might be different for directors' meetings. However, the statute did not then contain the definition of valid actions as actions taken by a majority of directors present at a "meeting at which a quorum is present", which is now set out in the last sentence of Section 141(b), and it is arguable that the presence of a quorum at the meeting's inception validates all action taken by a majority of the number initially present even if some directors thereafter depart. However, there is no definitive case law on the topic. The court would no doubt be inclined to validate a directorial decision made where a director is called unexpectedly from a meeting and thereafter provides, by subsequent rat-

ification, some indication of his approval of actions taken in his absence. Where a departure by one or more directors is a conscious effort to break the quorum and prevent action, however, the outcome is highly uncertain (footnotes omitted).

Thus, Drexler suggests that, in light of the subsequent addition of the last sentence to § 141(b), the reasoning of the *Hexter* case can be applied to the instant facts involving Directors. We agree, particularly under the facts here. Cappello chose to be present at the March 15, 1990, meeting for purposes of the organization of the meeting. Therefore, he should not be able to empower or disable the Board by entering or departing from a meeting, respectively, depending upon his assessment of whether the Board is likely to approve a resolution of which he would disapprove, thereby basically effecting a veto power by his departure.

Cappello's presence obviously would have had no effect on the outcome of the vote. Ironically, his negative vote on the motions in controversy would have rendered the affirmative vote on the motions at the March 15, 1990, meeting unassailable.

We therefore believe that Cappello should, logically and under the law of Delaware, be counted as "present at a meeting at which a quorum is present" on March 15, 1990. For this reason, the vote to file this bankruptcy case at that meeting was the vote of a clear majority of the Directors at a meeting at which a quorum was present and was valid, and the motion to dismiss this case on this basis must be denied.

F. NEVERTHELESS, IN AN ABUNDANCE OF CAUTION, WE DEEM IT APPROPRIATE TO REOPEN THE RECORD TO ALLOW THE DEBTOR TO ATTEMPT TO PROVE ITS ALLEGATION THAT THE ACTIONS OF THE BOARD ON MARCH 15, 1990, WERE RATIFIED BY A RESOLUTION OF AN UNQUESTIONABLY VALIDLY-APPOINTED BOARD ON APRIL 6, 1990.

■ Like Drexler, we find the conclusion that Cappello may be counted for purposes of a quorum at the March 15, 1990, meeting logical, but not definitively supported by pertinent case law. As a result, in an abundance of caution, we shall take what appears to be the more certain alternative route of reopening the hearing on the original motion to dismiss this bankruptcy case to allow the Debtor to present evidence of ratification of the resolutions of March 15, 1990, at a post-hearing Board meeting of April 6, 1990.

We have no doubt that the actions of what we hold is the Debtor's properly-constituted Board of Directors would avert dismissal of the case if the Debtor could thereby establish that the Board duly ratified a previous, defective corporate authorization to file this case. *See In re Martin-Trigona*, 760 F.2d 1334, 1340–43 (2d Cir. 1985); *Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839, 842–43 (8th Cir.), *cert. denied*, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949); *In re People's Warehouse Co.*, 273 F. 611, 613 (S.D.Miss.1921); *In re Hawaii Times, Ltd.*, 53 B.R. 560, 563 (Bankr.D.Hawaii 1985); *In re Gas Reclamation, Inc.*, 51 B.R. 860, 865 (Bankr.S.D.Tex.1985); and *In re Valles Mechanical Industries, Inc.*, 20 B.R. 355 (Bankr.N.D.Ga.1982). *Cf. In re Greater Atlanta Apt. Hunter's Guide, Inc.*, 40 B.R. 29, 32–34 (Bankr.N.D.Ga.1984) (previous directors of corporation serving only until successors were qualified were authorized to file bankruptcy).

There is also little doubt that directors of a corporation can validate previous unauthorized actions of a board or purported board of directors by ratification under the law of Delaware, *see Michelson v. Duncan*, 407 A.2d 211, 219 (Del.1979); *Hannigan v. Italo Petroleum Corp.*, 43 Del. 333, 339–40, 47 A.2d 169, 172 (1945); and *Blish, supra*, 30 Del.Ch. at 583, 64 A.2d at 604, as well as under the pertinent law applicable in all American jurisdictions. *See* 18B AM. JUR.2d, *supra*, 491–92, 493. Moreover, unlike many of the instances where only implied ratification has been found to have arisen, *id.* at 502–11, the act allegedly constituting ratification here was apparently

quite unequivocal. The reconstituted Board allegedly adopted a resolution expressly ratifying the filing of this case by a healthy margin at the meeting on April 6, 1990. Therefore, we should and will proceed to give the Debtor an opportunity to prove these facts.

### G. PROCEDURALLY, THIS COURT MAY PROPERLY ORDER THE RECORD REOPENED AT THIS JUNCTURE.

■ The only question remaining before us is whether it is procedurally permissible for us to reopen the hearing on the motion to dismiss this case on the basis of the instant motion and the responses of the Debtor hereto which are before us.

We begin from the premise that this court has the power to grant whatever relief is appropriate to the parties under any related federal rule, irrespective of whether the parties have specifically invoked the correct rule. *See Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988); *Brown v. Wright,* 588 F.2d 708, 710 (9th Cir.1978); *United States Gypsum Co. v. Schiavo Bros.,* 668 F.2d 172, 179–80 & n. 8 (3d Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); and 6A J. MOORE, FEDERAL PRACTICE, ¶ 59.04[6], at 59–24 (2d ed. 1989). By way of example, we considered the Movants' motion before us as appropriately presented under F.R.Civ.P. 59 even though the Movants did not expressly cite to any F.R.Civ.P. at all and the Debtor argued, with perhaps technical accuracy, that the motion should logically be considered only as a motion pursuant to F.R.Civ.P. 52, since it expressly requests amendments to factual findings, and should have been denied for lack of conformity to that rule, because the ultimate relief sought was, effectively, a reversal of the court's prior decision.

■ The Debtor now contends, in the alternative, that, if this court does not simply proceed to deny the Movants' motion on the present record, it should reopen the proceedings to adduce evidence of ratification on the basis of F.R.Civ.P. 52. We believe that, on this point, the Debtor is not technically correct. Although the Debtor is seeking amendments to our findings without seeking alteration of the final judgment, as per a F.R.Civ.P. 59 motion, 6A J. MOORE, *supra,* ¶ 59.04[6], at 59–23, the amendments are sought on the basis of new evidence not only not of record, but not even in existence at the time of the previous hearing or our previous decision of April 3, 1990.

In such an instance, the relief sought by the Debtor is, in substance, a motion to reopen the record to take additional testimony. Such a motion is not the equivalent of a Rule 59 motion or of a Rule 52 motion, *see* J. MOORE, *supra,* ¶ 59.04[13], at 59–29, but is a distinct animal referred to as "a cannibalization of those qualities found in Rules 59 and 60" [1] in *Caracci v. Brother Int'l Sewing Machine Corp.,* 222 F.Supp. 769, 771 (E.D.La.1963), *aff'd,* 341 F.2d 377 (5th Cir.1965). As such, a motion to reopen the record to take additional evidence, which is apparently the exclusive means of adding post-trial developments to a record, *see Contempo Metal Furniture Co. v. East. Texas Motor Freight Lines, Inc.,* 661 F.2d 761, 767 (9th Cir.1981), is not bound by the time-strictures of F.R.Civ.P. 52 or 59. [2]

A motion to reopen a case is addressed to the sound equitable discretion of the trial court. *See Zenith Radio Corp. v. Hazeltone Research, Inc.,* 401 U.S. 321, 330–31,

---

**1.** Such a motion also does not fall within the scope of F.R.Civ.P. 60(b)(2), which allows relief from a judgment for newly-discovered evidence, because to come within this rule, the newly-discovered evidence must apparently have been in existence and simply not have been discovered, as of the time of trial. *See, e.g., Brown v. Pennsylvania R.R.,* 282 F.2d 522, 526–27 (3d Cir.1960). In any event, the Debtor does not seek relief from, but rather seeks affirmance of, our judgment of April 3, 1990. Therefore F.R.Civ.P. 60 appears inapplicable.

**2.** This principle is logical when applied as to post-trial factual developments, which may not occur until more than ten days after the court's decision.

We also note that the Movants' timely Rule 59 motion would permit this court to *sua sponte* grant any relief which we deem appropriate to the Debtor under Rule 59 for any reason, even if no cross-motion for such relief were filed. *See* F.R.Civ.P. 59(d).

91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *Brown v. Wright, supra*, 588 F.2d at 709–10; *Rochez Bros. v. Rhoades*, 527 F.2d 891, 894–95 & n. 6 (3d Cir.1975); 6A J. MOORE, *supra*, ¶ 59.04[13], at 59–33 to 59–38; and 75 AM.JUR.2d 243–44 (1974). In exercising its discretion on such a motion, a court must weigh "the interest of fairness and substantial justice," 6A J. MOORE, *supra*, ¶ 59.04[13], at 59–35, the burdens placed upon the parties and their witnesses, undue prejudice resulting from granting or denying the motion, and whether granting or denying the motion whould facilitate judicial economy. *Rochez Bros., supra*, 527 F.2d at 894 n. 6.

A court may act *sua sponte* in reopening the record. *See Students of California School for the Blind v. Honig*, 736 F.2d 538, 548, *reh'g en banc denied*, 745 F.2d 582 (9th Cir.1984). Where significant posttrial developments have occurred, *denial* of such a motion may be an abuse of discretion. *See F. v. F.*, 358 A.2d 714, 716 (Del. 1976).

We do not consider ourselves to be acting *sua sponte* here, in light of the Debtor's efforts to invoke F.R.Civ.P. 52 to reopen the record to add testimony relating to the April 6, 1990, Board meeting. However, we also believe that the circumstances here are compelling enough that we should do so even if the Debtor's request to reopen the record were not before us. The Debtor would scarcely have been motivated to file a motion requesting any relief from our Order of April 3, 1990, had that Order not been challenged by the Movants in the instant motion. The need to reopen the record would only become necessary if, in the event of an appeal, another court would rule differently than us on the issue of whether a quorum existed at the March 15, 1990, meeting. See pages 804–05 *supra.*

However, it appears that, with the record in its current state, an appeal would be likely. In our view, it would be unjust to the Debtor, and would be unduly taxing to the resources of both parties and their witnesses and considerations of judicial economy, for us to leave the record in its present state. If, as the Debtor alleges without any factual rebuttal from the otherwise very prolific Movants, its Board did ratify the March 15, 1990 motion, at the April 6, 1990, meeting, this evidence should be brought into the record now, and an alternative basis for upholding the Debtor's filing be established, rather than having the Debtor's right to file and proceed with this bankruptcy rest solely upon our interpretations of Delaware law which is somewhat uncertain.

On the other hand, if we do reopen the record, the Movants must be accorded a full opportunity to rebut the Debtor's contention that the March 15, 1990, Board resolution was in fact duly ratified on April 6, 1990. *See* 75 AM.JUR.2d at 245. Scheduling a further hearing, rather than making a decision on the papers before us, is, therefore, the proper course to take.

## H. CONCLUSION

For this reason, we shall reopen the record and promptly schedule a supplemental hearing, restricted to the issue of whether the Debtor's filing of this case, if not properly authorized, was duly ratified at the subsequent Board meeting of April 6, 1990, and any rebuttal thereto by the Movants. An appropriate Order so directing will be entered.

### ORDER

AND NOW, this 20th day of July, 1990, after a hearing of July 10, 1990, on the Motion of Alexander L. Cappello, et al. ("the Movants") to Alter and Amend Findings of Fact and Conclusions of Law, to Open Order and For Reconsideration of our Order of April 3, 1990, denying the Movants' Motion to Dismiss this bankruptcy case subsequent to our Opinion and Order of June 20, 1990, after which we were satisfied that the filing of the underlying bankruptcy case, if an improper or unauthorized act, was, subsequent to our hearing and decision of these matters, ratified by the Debtor's properly-constituted Board of Directors of April 6, 1990, it is hereby ORDERED as follows:

1. Our Order of April 3, 1990, is REAFFIRMED.

2. The Motion to dismiss this bankruptcy case is DENIED.

## APPENDIX A

### ORDER AND MEMORANDUM

AND NOW, this 3rd day of April, 1990, after a consolidated hearing of March 29, 1990, and April 2, 1990, on the above adversary proceeding ("the Proceeding") and the Motion of certain of the Defendants to Dismiss the Debtor's bankruptcy petition or in the alternative make a determination that the Movants are members of the legally constituted Board of Directors of the Debtor ("the Motion"), in light of the mutual request of the parties that we decide the Motion expeditiously, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED. It is determined that the instant petition was filed pursuant to a valid resolution in a meeting in which a quorum of the duly-constituted Board of Directors of the Debtor was present.

2. The Proceeding shall be DISMISSED as moot in light of this ruling on the Motion.

The principal contention of the Movants was that they were an eight-body group elected to the Board of Directors on December 13, 1989, effective ten days after the dispatch of an Information Statement of January 29, 1990 by the Debtor, pursuant to Section 14(f) of the Securities Exchange Act, 15 U.S.C. § 78n(f) (hereinafter "the Info Statement"), and that therefore the four votes of the six members of the incumbent Board at a meeting of March 15, 1990, in support of a resolution to authorize the bankruptcy filing were insufficient.

The burden of proving the Board's lack of authority to file this case was upon the Movants. *See In re Beck–Rumbaugh Associates*, 49 B.R. 920, 921 (Bankr.E.D.Pa.), *aff'd*, 1985 WL 38 (E.D.Pa. Sept. 10, 1985); and *In re Penny Saver, Inc.*, 15 B.R. 252, 254 (Bankr.E.D.Pa.1981).

Our decision is based primarily upon our conclusion regarding the effect of the acceptance by the incumbent Board of the terms of a Financing Agreement of December 13, 1989, between Euro American Capital Corp. ("EACC"), Bruce Energy Centre, Ltd. ("BES"), and the Debtor, which contemplated the Movants' installation as Board members as designees of EACC and BES, upon certain conditions, in exchange for the continued funding of the Debtor by EACC and BES. We find that the conditions were never all satisfied and hence the incumbent Board members have at all times been the only lawful Board members of the Debtor.

In the Board resolution of December 11, 1989, which expressly considered expansion of the Board, only three of the eight prospective new Board members were named, and the other slots were identified merely as unnamed selectees of EACC or BES. This designation evinces a lack of finality in the resolution which cause us to conclude that this resolution cannot be deemed as a final election of eight new members to the Board.

Thereafter, the incumbent Board members acted as the governing Board of the Debtor at meetings on February 7, February 28, March 7, and March 12, 1990. A protest was made by Alexander Cappello ("Cappello"), a Movant who is a principal of EACC and an incumbent Board member, to the actions of the incumbent Board at the beginning of the fateful meeting of March 15, 1990. However, this protest was made only *after* all of the above meetings were conducted *without* protest by the incumbent Board. No attempt was made to enjoin the Board from meeting. As the *de facto* governing Board of the Debtor, the incumbent Board's actions should be accorded a presumption of validity. *Cf. Halle & Stieglitz, Filor, Bullard, Inc. v. Empress International, Inc.*, 442 F.Supp. 217, 225 (D.Del.1977) ("Under Delaware law a director who lawfully is in office before an election which later is found invalid continues in office until his successor is duly elected and qualified."). The presumption has not been overcome.

Supportive of this conclusion is the acquiescence of both Cappello and Wolf Von Teichman ("Wolf"), a principal of BES who is another Movant, to the opinion of the Debtor's outside securities counsel that the Info Statement of January 19, 1990, was

defective, due, in part, to its failure to disclose the veto power over the Debtor's actions to which Wolf believed that BES was implicitly entitled and was implicitly agreed to by all interested parties. Had Wolf executed a statement proposed by the Debtor's counsel that there was no such agreement, then the Debtor's counsel agreed that no amended Info Statement would be necessary, and the Movants' appointment as Directors may well have been effective. However, Wolf refused to execute this statement. It therefore appears that the Info Statement was in fact defective, and that the dispatch of the defective Info Statement on January 29, 1990, did not trigger the election of the Movants to the Board. As late as March 12, 1990, Cappello was negotiating to pay for the dispatch of the necessary amended Info Statement which he and Wolf implicitly agreed was necessary. The amended Info Statement was never sent. The Board rescinded its participation in the Financing Agreement at the March 15, 1990, meeting and the possibility of the Financing Agreement's becoming effective was lost. Therefore, it might be alternatively concluded that the appointment of the Movants never became effective. *See Halle & Stieglitz, supra,* 442 F.Supp. at 225.

The Movants also argued that, since the incumbent Board numbered eight directorships, a majority of directorships, or eight directors, were necessary to form a quorum at the March 15, 1990, meeting. However, one of the Directors had resigned months before, and the Financing Agreement was predicated on the validity of only *seven* incumbent directorships, which would give the eight new Board members a majority. Two other directors resigned just prior to that meeting. Three of the remaining five directors would appear to us to constitute the necessary quorum. *But see Bruch v. National Guarantee Credit Corp.,* 13 Del.Ch. 180, 116 A. 738, 740 (1922). However, it should be recalled that Cappello did briefly attend the meeting and hence might be "counted" for quorum purposes and one of the vacant directorships was filled during the meeting. Therefore, five directors were present during the meeting. The fourth director voted in favor of the bankruptcy filing, thus constituting a vote by the majority of the seven-director Board on this point. Considering all of these facts, we conclude that the actions of the Board at the meeting of March 15, 1990, authorizing the bankruptcy filing and terminating the Financing Agreement, were valid actions by a quorum of the Board.

We have decided to dismiss the Proceeding, which sought a preliminary injunction of a meeting called by Cappello and Movant R. Eric Miller with the other Movants, who it was feared would purport to act as the Debtor's lawful Board. The first amendment of the Constitution would appear to bar the relief sought. We also note that a debtor is obliged to establish a "clear abuse" of rightful powers of the Movants as directors of the Board, *see In re Johns–Manville Corp.,* 801 F.2d 60, 64–69 (2d Cir.1986), to enjoin their meeting. Here, due to the fact that the Movants were not "rightful" Board members, the relief sought appears inappropriate. Moreover, as we have determined that the incumbent Board is the only properly-constituted Board of Directors of the Debtor, further litigation of this proceeding appears to be unnecessary and the relief sought appears to be moot.